[Civ. No. 67917. Second Dist., Div. Four. Feb. 29, 1984.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION,
Plaintiff and Respondent, v.
AZUSA UNIFIED SCHOOL DISTRICT et al.,
Defendants and Appellants.

582

COUNSEL

Wagner, Sisneros & Wagner and Patrick D. Sisneros for Defendants and Appellants.

Peter A. Janiak, Madalyn J. Frazzini, E. Luis Saenz, Marcia Meyers and William C. Heath for Plaintiff and Respondent.

OPINION

AMERIAN, J.—

### BACKGROUND

This is an appeal by Azusa Unified School District, et al. (hereinafter appellants) from a judgment and order entered June 16, 1982, granting a peremptory writ of mandate. Respondent herein and petitioner below is the California School Employees Association (CSEA). CSEA is a labor organization representing classified employees of the Azusa Unified School District, including cafeteria workers, bus drivers and instructional aides.

On behalf of the cafeteria workers, bus drivers and instructional aides, CSEA petitioned the trial court for a peremptory writ of mandate seeking to compel appellants, pursuant to Education Code section 45203,[1] to pay these classified employees wages plus interest and other benefits for six days when these employees were prevented from working.[2]

The six days the classified employees were prevented from working fell within the regular school attendance calendars and were designated as either "local holidays for students" or "professional/conference days." The practical effect for these days was the same regardless of the designation. On these days students were not in attendance, teachers (certificated employees)

---

[1] All references are to the Education Code, unless otherwise indicated.

Section 45203 provides, in part, ". . . Notwithstanding the adoption of separate work schedules for the certificated and the classified services, on any schoolday during which pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day."

[2] These specific classified workers were prevented from working on the following dates: November 7, 1979; January 28, 1980; November 19, 1980; February 2, 1981; November 4, 1981; and February 1, 1982.

were present and were paid. Some classified employees were present on these days and received pay while other classified employees (bus drivers, cafeteria workers and instructional aides) did not work and were not paid.

The grounds urged in support of the petition for peremptory writ of mandate to compel payment of wages to the classified employees who were not scheduled to work on the six days described above was section 45203.

Appellants answered the petition and asserted five affirmative defenses. First, appellants alleged that CSEA had failed to exhaust administrative remedies. Second, it was alleged that failure to pay wages to classified employees who did not work on the days students were not in attendance constituted an arguably unfair practice and that the Public Employee Relations Board, therefore, had exclusive jurisdiction over the matter. Third, it was alleged that the suit was barred because CSEA did not first satisfy the claim filing requirements of Government Code section 900 et seq. Fourth, appellants alleged that the one-year statute of limitations provided by section 911.2 of the Government Code barred claims for wages for more than a year prior to the filing date of the petition. Finally, appellants alleged that the action was barred because CSEA failed to follow the grievance procedures provided by the collective bargaining agreement between CSEA and appellants.

Based on oral and documentary evidence, the trial court made findings of fact and conclusions of law which are summarized as follows:

The Board of Education of the Azusa Unified School District approved the school attendance calendars for school years 1979-1980, 1980-1981 and 1981-1982. Each of the approved school attendance calendars provided for two days designated as either local holidays for students or professional/conference days, which designations "represent the same type of day on the school calendar." On these designated days "students were not in attendance at school; teachers were at school, worked, and received their regular rate of pay." Also on these days "some classified employees were required to work and received their regular rate of pay; other classified employees, including cafeteria workers, bus drivers, and instructional aides, were not allowed to work . . . and received no wages for said days."

The court found that under section 45203 the above designated days "were school days on which students would otherwise have been in attendance, but were not." The trial court thus concluded that, under section 45203, all classified employees were entitled to be paid whether or not the employees worked on the above designated days.

It was further found that CSEA exhausted all available administrative remedies and that the grievance procedure contained in the collective bargaining agreement between the parties was not a remedy applicable to the instant dispute. The court also concluded that CSEA was not obliged to file a claim pursuant to Government Code section 900 et seq. The court then found that appellants' "refusal to pay all classified employees their regular rate of pay" for the above designated days, "whether or not said classified employees were required to report for duty, is a violation of Education Code § 45203."

ISSUES

The following issues are raised on the instant appeal:

1. Whether the claim for wages made under section 45203 is excepted from the filing requirements of Government Code section 900 et seq.;

2. Whether mandamus is the proper remedy where the dispute concerns the proper construction of section 45203 which gives rise to an official duty to pay a salary claim;

3. Whether administrative remedies are available to CSEA which were not exhausted, thus precluding the issuance of the writ as premature; and

4. Whether when the school attendance calendars were established by appellants and certain days during the school year were designated as days when students would not be required to attend school, the effect of such scheduling took the designated days outside the ambit of section 45203.

CONCLUSIONS

For reasons discussed below, we find that while in this case the claim for wages under section 45203 is excepted from the filing requirements of Government Code section 900 et seq. (see Gov. Code, § 905, subd. (c)), appellants adopted a board policy requiring that a claim for wages be filed according to the procedures established by the provisions of Government Code section 900 et seq. Accordingly, the trial court erred in finding that a claim was not required to be filed as a prerequisite to instituting the proceedings here under review. However, we conclude that the claim filing requirements adopted by appellants were satisfied under the doctrine of substantial compliance and that CSEA was not, therefore, precluded from petitioning for writ of mandate to compel the payment of wages.

Also, the finding of the trial court that all available administrative remedies were exhausted by CSEA prior to commencing the proceedings below was proper. Finally, we conclude that the plain and unambiguous language of section 45203 entitles classified employees to their regular pay whether or not they are required to report for duty, on days pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay.

DISCUSSION

I. *Is the claim for wages under section 45203 excepted from the claim filing requirements of Government Code section 900 et seq. and, if not, may the doctrine of substantial compliance be invoked?*

■ Our discussion begins with Government Code section 905. That section provides, in part, that: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against local public entities except: [¶] . . . . [¶] (c) Claims by public employees for fees, salaries, wages, mileage or other expenses and allowances."

The exception to the claim filing requirements of Government Code section 900 et seq. quoted above relates only to claims which are not based on contractual or tortious theories of recovery. (See, e.g., *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1078-1079 [195 Cal.Rptr. 576]; *Hanson v. Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942, 946-948 [181 Cal.Rptr. 378].) Since the claim for wages in this matter arises from a dispute over the proper construction of section 45203 and, thus, is not founded upon either a contract or a tort theory of recovery, the claim for wages falls within the exception of Government Code section 905, subdivision (c).

However, Government Code section 935 provides, in part: "(a) Claims against a local public entity for money or damages which are excepted by Section 905 . . . , and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity. [¶] (b) The procedure so prescribed may include a requirement that a claim be presented and acted upon as a prerequisite to suit thereon. If such requirement is included, any action brought against the public entity on the claim shall be subject to the provisions of Section 945.6 and Section 946."

Pursuant to Government Code section 935, appellants adopted board policy 2602 in 1968, which provides: "As a prerequisite to bringing suit against the school district, any claim against the school district for money or damages as set forth below, or for money or damages which are not governed by any other statutes or regulations expressly relating thereto, shall be presented and acted upon in accordance with Title 1, Division 3.6, Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of the Government Code of California: [¶] Claims for fees, salaries, wages, mileage or other expenses and allowances [¶] Any claim against the school district for money or damages which are [sic] not governed by any other statutes or regulations expressly relating thereto, shall be acted upon in accordance with Title 1, Division 3.6 of the Government Code of California."

Thus, while CSEA was not required by Government Code section 900 et seq. to file the instant claim for wages as a prerequisite to petitioning the court for a peremptory writ of mandate, a claim was required to be lodged with appellants under the mandates of board policy 2602. (Cf. *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 287 [159 Cal.Rptr. 528].)[3]

The trial court finding that CSEA was not required to file a claim was, therefore, erroneous.

■ The next question is whether the doctrine of substantial compliance with the claim filing requirements adopted by appellants under board policy 2602 may be invoked. We conclude that the doctrine may properly be invoked in this case.

Exhibits attached to the petition for peremptory writ of mandate included, inter alia, copies of letters exchanged between the field representative for CSEA, Thomas McGuire, and appellant Robert Kahle, Assistant Superintendent of the Azusa Unified School District. The first letter by Mr. Mc-

---

[3]Without citing authority, CSEA urges that board policy 2602 is superseded by section 45203 because of the language in Government Code section 935, subdivision (a) which is underscored below: "Claims against a local public entity for money . . . which are excepted by Section 905 . . . and which are not governed by any other statutes or regulations expressly relating thereto . . . ." Relying on this language, the thrust of CSEA's argument is that section 45203 is the statute that takes precedence over the claim filing procedures prescribed by Government Code section 900 et seq. This argument is without merit. Section 45203 does not prescribe the procedures for filing a claim for wages. Rather, this section only gives rise to the duty to pay wages. A reasonable construction of the language of Government Code section 935, when taken as a whole, permits a local entity to adopt the claims procedures prescribed by the Government Code or some other procedure for claims otherwise excepted from the filing requirements of Government Code section 900 et seq.

Guire, dated April 23, 1981, informed Mr. Kahle that Mr. McGuire believed that failure to pay a number of cafeteria workers, who were off work on numerous professional and minimum days, was a violation of section 45203. Mr. McGuire requested a meeting with Mr. Kahle to correct the problem.

In a letter dated August 25, 1981, Mr. Kahle responded that the district's position was that "we are in violation of Education Code section 45203 for minimum days . . . . It is also the district's position that we are not in violation for days not worked on professional days . . . . [¶] We are now in the final stages of drafting the amounts due each employee and notification to the employees involved . . . ." The next letter written by Mr. McGuire to Mr. Kahle, dated September 14, 1981, advised Mr. Kahle that the position of CSEA with regard to the failure to pay classified employees for professional days was that this was a violation of section 45203. The fourth letter, dated September 25, 1981, written by Mr. Kahle reiterated the district's position that there was no violation of section 45203 with regard to professional days.

Recently, in *Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70 [135 Cal.Rptr. 621], the Court of Appeal discussed the doctrine of substantial compliance with the claim filing requirements of Government Code section 900 et seq. in light of the purposes of the Tort Claims Act. (Gov. Code, § 800 et seq.) There, the court stated, "The primary function of the claims act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. [Citations.] The act should not be applied to snare the unwary where its purpose has been satisfied [citations]; consequently courts employ a test of substantial rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims act. [Citations.] If the claim satisfies the purpose of the act without prejudice to the government, substantial compliance will be found. [Citations.]" (*Elias, supra,* at p. 74.)

Here, there can be no dispute that the series of communications between CSEA and appellants' representatives satisfied the purposes of the claims act. The letters demonstrate that appellants were apprised in April 1981 of a claim of a group of employees for wages claimed for the school years 1979-1980 and 1980-1981, investigated the claim for wages and even settled part of the dispute by agreeing to pay wages due certain classified employees for minimum days.

One final point concerning the claim filing requirement must be discussed. Appellants contend that under Government Code section 911.2, a claim

for wages due under section 45203 may be made only for the period of one year prior to the filing date of the petition.[4] While appellants correctly assert that the one-year limitations period under Government Code section 911.2 governs, appellants incorrectly rely upon the date the petition was filed as the date from which the one-year limitations period is calculated. Such reliance is based upon the apparent misconception that the letters exchanged between the parties do not satisfy the claim filing requirements adopted by appellants in board policy 2602.

As discussed above, the letters substantially complied with the claim filing requirements of Government Code section 900 et seq. as adopted in board policy 2602. Therefore, claims for wages due under section 45203 should be allowed for the one year preceding April 23, 1981, the date of the first letter authored by Mr. McGuire. Consequently, the only claims for wages barred by the one-year statute of limitations are those made for the school days of November 7, 1979 and January 28, 1980.

II. ██ *Is mandamus the proper remedy where the dispute concerns the construction of section 45203 which gives rise to an official duty to pay a wage claim?*

In the case at bar, the underlying dispute concerns the question whether or not section 45203 requires appellants to pay classified employees their regular pay whether or not they work on days during the school year when students are not in school as scheduled and for which certificated employees are paid.

"It is a general rule that the extraordinary remedy of mandate is not available when other remedies at law are adequate. [Citation.] In proceedings involving claims for wages by municipal employees or by parties to a contract with a municipality, it is generally held that an ordinary action at law for damages is adequate, and a writ of mandate will be denied. . . . [¶] In a few situations involving claims by state or municipal employees for wages the general rule has been relaxed. For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate effect of a decision may be to adjudicate a money

---

[4]Government Code section 911.2 provides that, "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than the 100th day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action."

claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved. [Citations.] . . ." (*Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 198 [272 P.2d 757]; see also, *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609]; *Coan* v. *State of California* (1974) 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520 P.2d 1003].)

Here, mandamus is a proper remedy because the underlying dispute concerns the proper construction of section 45203 giving rise to the official duty to pay the wage claims.

*Northrup* v. *Haynes* (1936) 15 Cal.App.2d 665 [59 P.2d 1056], is cited as sole authority for appellants' contention that CSEA has an adequate remedy at law (an action for breach of contract) and that the mandamus proceeding instituted below was, therefore, precluded. *Northrup* held that writ of mandate was not a proper remedy for recovery of wages due a municipal employee, because a suit to recover salaries due was available. (*Id.* at p. 666.) That case is not relevant because here, unlike the facts in *Northrup* v. *Haynes, supra,* what is in issue is the proper construction of a statute which gives rise to a duty to pay wages.

III. ■ *Are other administrative remedies available to CSEA which have not been exhausted and which would preclude the proceeding in mandamus as premature?*

The essence of appellants' arguments here is that the collective bargaining agreement between CSEA and the school district provides for a grievance procedure which must be observed whenever there is a violation of an express term of the agreement. Appellants contend that the failure to pay wages alleged to be due under section 45203 constitutes a violation of certain express provisions of the collective bargaining agreement relating to salaries. It is argued, therefore, that the grievance procedure established by the collective bargaining agreement was required to be exhausted before the proceeding in mandamus could be instituted.

CSEA, however, correctly points out that none of the express terms of the collective bargaining agreement relating to salaries were violated and that, therefore, grievance proceedings for violations of section 45203 were not required to be invoked.

The provisions of the grievance procedure established by the collective bargaining agreement provide, inter alia, "A grievance is . . . a statement by a union member that the District has violated an express term of this

agreement and that by reason of such violation his or her rights have been adversely affected. All other matters and disputes of any nature are beyond the scope of these procedures."

Article VII of the former collective bargaining agreement, in effect from October 1977 to June 1980, is entitled, "Salaries." That article relates solely to salary adjustments and "Longevity Pay." Article XIV of the collective bargaining agreement, in effect for the period of July 1980 to June 1983, also entitled "Salaries," concerns adjustments in salary and longevity pay, as well.

With these various provisions of the collective bargaining agreement in mind, we conclude that there has been no violation by appellants of the express terms of the agreement which would invoke the grievance procedures of the agreement, since the dispute at bar is whether classified employees are entitled to wages under section 45203.

We also reject appellants' contention that the proceedings below could not be brought because an unfair practice charge was required to be filed with the Public Employee Relations Board (PERB) which has exclusive jurisdiction over the initial determination of whether an unfair practice has been committed. Appellants urge that the refusal to pay wages to certain classified employees under section 45203 constitutes an arguably unfair practice.

With respect to unfair practices, Government Code section 3541.5 provides, "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the [PERB]."

Wages are mandatory subjects of bargaining between the representatives of employers and employees. (See Gov. Code, § 3543.2; see also, *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666, 671-672 [169 Cal.Rptr. 893].) However, the fact that wages are the subject of the dispute at bar does not resolve the question whether refusal to pay wages claimed under section 45203 constitutes an unfair practice. Section 3543.5 of the Government Code lists five unlawful practices of employers and Government Code section 3543.6 is the comparable listing of employee organization activities which are prohibited.[5]

---

[5]Government Code section 3543.5 provides: "It shall be unlawful for a public school employer to: [¶] (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. [¶] (b)

A review of judicial decisions discussing "unfair practices" discloses that the activities of representatives of employers or employees in those cases "arguably" fell within the activities proscribed by Government Code sections 3543.5 or 3543.6. (See *Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254 [151 Cal.Rptr. 724] (school board unilaterally froze teachers salaries while contract negotiations were pending); *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259 [177 Cal.Rptr. 888] (teachers engaged in work stoppage in violation of express terms of collective bargaining agreement); *Los Angeles Council of School Nurses* v. *Los Angeles Unified School Dist., supra,* 113 Cal.App.3d 666 [169 Cal.Rptr. 893] (school nurses sued their collective bargaining representatives challenging a provision in their collective bargaining agreement which required them to work longer on-school site hours than was required of teachers in the school district); *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007 [175 Cal.Rptr. 105] (appeal by school district from a decision of the PERB that the school district committed an unfair practice when it unilaterally terminated Blue Cross as administrator of employee medical claims and substituted a different company as the district's medical claims processor. The change resulted in loss of benefits to employees).)

These cases lead us to conclude that appellants' refusal to pay the wages claimed by CSEA on behalf of certain of its members does not fall within the purview of Government Code section 3543.5 as an unfair practice. There is nothing in the record here which indicates that the refusal to pay the wages claimed under section 45203 is of the same character as any of the proscribed activities designated as unfair practices under Government Code section 3543.5. Manifestly, the refusal to pay the claimed wages stems from the interpretation given section 45203 by appellants. We have found no authority for the proposition that an employer's interpretation of a statute, whether correct or incorrect, which adversely affects the rights of its

---

Deny to employee organizations rights guaranteed to them by this chapter. [¶] (c) Refuse or fail to meet and negotiate in good faith with an exclusive representative. [¶] (d) Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another. [¶] (e) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

Government Code section 3543.6 provides: "It shall be unlawful for an employee organization to: (a) Cause or attempt to cause a public school employer to violate Section 3543.5. [¶] (b) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. [¶] (c) Refuse or fail to meet and negotiate in good faith with a public school employer of any of the employees of which it is the exclusive representative. [¶] (d) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

employees to wages constitutes an unfair practice which should be left for the PERB to determine in the first instance. While an interpretation of a statute adverse to the employee by the employer may be unfair in the lay-sense, such a result does not necessitate a conclusion that it is also an "unfair practice" within the meaning of Government Code section 3543.5.

We conclude that the refusal to pay wages claimed under section 45203 to the classified employees represented by CSEA does not constitute an arguably unfair practice which the PERB should determine in the first instance. The trial court properly found that all administrative remedies were exhausted by CSEA prior to instituting the proceeding in mandamus.

IV. ██ *When school attendance calendars are established by appellants which include school days designated as days during which students will not be required to be in attendance, and for which certificated personnel are paid, does such scheduling take those designated days outside the purview of section 45203?*

The real controversy in the case at bar concerns the proper construction of the portion of section 45203 which provides that: "Notwithstanding the adoption of separate work schedules for the certificated and the classified services, on any school day during which pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day."

Appellants' interpretation of this provision is that the effect of scheduling students not to be present in school on days designated as either local holidays for students or as professional/conference days, manifested an intent not to have students in school on those days. Upon this premise it is argued that the designated days were not days during which students would "otherwise" have been in attendance. Appellants also contend that the language of section 45203 under scrutiny here, contemplates only those circumstances when students "are scheduled (would otherwise have been in attendance) then suddenly are not and certificated employees are paid . . . ."

CSEA contends, on the other hand, that to adopt the interpretation forwarded by appellants would render the provision a nullity. We agree.

To date no cases have dealt with the meaning or legislative intent of the provision of section 45203 in dispute. When called upon to construe a statute "a court should not look beyond the plain meaning of a statute when its language is clear and unambiguous, and there is no uncertainty or doubt as

to the legislative intent. (*Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 360 [90 Cal.Rptr. 657].)" (*Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].) Also, where the language of the statute is clear in itself, the court should refrain from artificially adding to or altering it. (See generally, Code Civ. Proc., § 1858.)

The language of section 45203 is plain and unambiguous. There is no qualifying language within the challenged provision of this section which limits classified employees' entitlement to wages for days only when pupils are "suddenly" not in school.

Furthermore, the fact that pupils were not scheduled to be in attendance on certain designated days during the school year does not, as appellants contend, mean that pupils would *not* otherwise have been in attendance. Absent such scheduling and absent evidence to the contrary, it is clear that pupils *would* have been in attendance.

The legislative history of section 45203 shows that this section was originally derived from former section 13656 and that the present language of section 45203 is identical to that of former section 13656 which was amended in 1974. The amendment of former section 13656 in 1974 is significant. The Legislature declared that the 1974 amendment should take effect immediately as an urgency statute. (Stats. 1974, ch. 1257, §§ 1, 2, pp. 2728-2729.) Section 2 of the amendment provides that, "This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: [¶] In order that the circumstances under which school classified personnel are entitled to paid holidays be clarified at the earliest possible time, and particularly that such clarification become effective prior to commencement of the 1974-1975 school year, it is essential that this act go into immediate effect."

The legislative history of the 1974 amendment to former section 13656 (Sen. Bill No. 2237) demonstrates a legislative intent that when certificated personnel are paid for days during which students would otherwise have been in attendance but are not, classified employees must also be paid for those days whether or not they are required to work.

We conclude, then, that the trial court properly construed section 45203 as requiring appellants to pay CSEA members for those days designated as local holidays and professional/conference days when students would otherwise have been in attendance, but were not, and for which certificated

employees were paid. Except for the claims for wages for November 7, 1979 and January 28, 1980, which were barred by the one-year statute of limitations of Government Code section 911.2, the trial court properly issued the peremptory writ of mandate compelling appellants to pay wages due classified employees under section 45203.

### DISPOSITION

The matter is remanded with instructions to the trial court to modify its judgment to delete the dates of November 7, 1979, and January 28, 1980, from the judgment. As so modified, the judgment is affirmed.

Woods, P. J., and Troost, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.