Opinion
 

 McDANIEL, J.
 
 *
 

 The County of San Bernardino (the county) and Richard Williams, Sheriff of the county (appellants), have appealed from a judgment granting the petition for writ of mandate (Code Civ. Proc., § 1085) of Deputy Sheriff Jeanette Tapia (Tapia). The judgment ordered the county to pay Tapia her salary and benefits for the period she was away from work because of work-related injuries.
 
 [1]
 
 Appellants contend that: (1) Government
 
 *379
 
 Code section 31725,
 
 [2]
 
 which Tapia relied on in her petition, does not authorize the payment of retroactive salary, and (2) Tapia failed to comply with the claim presentation requirements of section 900 et seq. (the claim presentation requirements,
 
 post).
 
 For the reasons stated below, we agree with appellants that Tapia failed to comply with the claim presentation requirements. Accordingly, we shall reverse the judgment and direct the trial court to dismiss Tapia’s petition.
 

 Factual and Procedural Background
 

 Tapia began to work for the county in 1979. On November 30, 1987, while she was working as a deputy sheriff at the county jail, she injured her neck and back as a result of an “altercation” with a female inmate. Thereafter, Tapia apparently requested and received a medical leave of absence without pay.
 
 [3]
 

 In 1988, Tapia was seen several times by a physician to whom she had been referred by the county’s risk management section. The physician’s November 7, 1988, report recites that Tapia “may not return to work” until after her December 19 appointment.
 

 On December 14,1988, Tapia consulted another physician. That physician considered that she was temporarily partially disabled, and recommended that she “return to modified work duties to ease her back into the work force.”
 

 On February 2, 1989, the county’s occupational health service found that: (1) Tapia was not medically qualified for regular duty; (2) she was medically qualified for light duty; and (3) her department could not accommodate light duty and had not approved her for such duty.
 

 
 *380
 
 On June 15, 1989, Tapia applied to the Board of Retirement of the San Bernardino County Employees’ Retirement Association (the board) for a service-connected disability retirement. The board found that she was not disabled and denied her application. She then sought and was granted a hearing before a board referee. On May 25,1990, the referee also found that she was not disabled.
 

 On June 18, 1990, Tapia’s attorney wrote the (then) sheriff on her behalf, asking, pursuant to section 31725, either for assistance in pursuing judicial review of the board’s anticipated adoption of the referee’s opinion, or reinstatement with back salary and benefits. The sheriff did not respond to the letter. Some time between July 1 and July 19, 1990, the board adopted the referee’s finding that Tapia was not disabled, and denied her application for a disability allowance. Neither Tapia nor the county sought judicial review of the board’s decision. On July 20, 1990, Tapia returned to work.
 

 On August 2, 1990, Tapia’s attorney wrote the sheriff again, informing him that he had received no response to his previous letter, but that, “[i]nstead, [Tapia] was offered a chance to return to work.” The attorney advised the sheriff, pursuant to
 
 Leili
 
 v.
 
 County of Los Angeles
 
 (1983) 148 Cal.App.3d 985 [196 Cal.Rptr. 427], that Tapia was entitled to backpay and benefits “to cover the time she was off pursuant to the former position of the Sheriff’s Department that [she] was sufficiently disabled that there was no available employment for her.” In this letter, the attorney also requested the sheriff to have someone in his department contact Tapia “to arrange for the restoration of back pay and benefits.”
 

 The sheriff did not respond to the August 2 letter from Tapia’s attorney; neither did Tapia write to the sheriff again or contact any other county official or agency.
 

 On June 3, 1991, Tapia filed a petition for writ of mandate against appellants seeking “retroactive salary and benefits . . . beginning the date following the day [she] last received regular compensation ... in 1987 until the date she returned to work.” Relying on section 31725, Tapia alleged that appellants had the obligation to restore such salary and benefits to her as a result of the board’s decision that she was not disabled. In her petition, Tapia failed to allege that she had complied with the claim presentation requirements and, although she referred to her June 18, 1990, letter to the sheriff, she did not refer to her August 2, 1990, letter to the sheriff. However, she did attach a copy of the August 2 letter as an exhibit to her petition.
 

 Appellants demurred to the petition, on the ground that Tapia had failed to allege compliance with the statutory claim presentation requirements in the
 
 *381
 
 Government Code. After a hearing, the demurrer was overruled, the court being of the view that a claim under section 31725 is not subject to such requirements.
 

 Thereafter, appellants filed a response to the petition, denying that they had any duty under section 31725 to provide Tapia with retroactive salary and benefits. As affirmative defenses, appellants alleged that Tapia had not complied with the statutory claim presentation requirements and, if any money were owing to her, that the county was entitled to an offset for all workers’ compensation benefits paid.
 

 At the hearing on the petition before a court which had not heard the demurrer, the court ruled that: (1) a claim under section 31725 is not subject to the claim filing requirements; (2) Tapia was entitled to compensation from
 
 November 30,1987,
 
 the day she was injured, through July 20,1990, the day she returned to work; and (3) the county was entitled to “take all lawful credits from that compensation.”
 

 Thereafter, judgment was entered granting the petition. The judgment ordered the county to pay Tapia “retroactive salary and benefits” from
 
 January
 
 30, 1987 (and not, as the court ordered,
 
 ante,
 
 from
 
 November
 
 30, 1987), and did not refer to the county’s entitlement to credits.
 

 This appeal followed.
 

 Discussion
 

 In pursuing their appeal appellants contend, as they contended in the trial court, that: (1) section 31725 does not require the payment of retroactive salary and benefits, and (2) Tapia failed to comply with the statutory claim presentation requirements.
 

 I.
 

 Section 31725
 

 Section 31725 provides, when the board denies an application for disability retirement on the ground that the employee (member) is not disabled and the employer does not obtain judicial review of the board’s action and
 
 “has dismissed the member for disability
 
 the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal.” (Italics added.)
 

 The county contends that section 31725 does not apply here, because Tapia was not “dismissed” within the meaning of the statute. Such dismissal,
 
 *382
 
 the county contends, occurs only when “an employer refuses to return an employee to work
 
 after
 
 the retirement board’s decision becomes final” (italics added) and here there was no such refusal because Tapia returned to work after the board’s decision became final.
 

 Not so. As the court stated in
 
 Leili
 
 v.
 
 County of Los Angeles, supra,
 
 148 Cal.App.3d 985: “section 31725 . . . provides that if an employee, who
 
 has
 
 been terminated from his employment because of physical incapacity, is
 
 later
 
 found not to be disabled by the retirement board, he must be reinstated to employment.”
 
 (Id.
 
 at p. 988, italics added.)
 

 Further, the court’s statement in
 
 Phillips
 
 v.
 
 County of Fresno
 
 (1990) 225 Cal.App.3d 1240 [277 Cal.Rptr. 531] that the purpose of section 31725 is “to eliminate severe financial consequences to an employee resulting from
 
 inconsistent decisions
 
 between an employer and the retirement board which leave the employee without retirement income and without income from a job” (225 Cal.App.3d at p. 1255, italics added), shows that the crucial factor is the inconsistency, rather than the sequence, of the decisions by the employer and the board.
 

 When we apply
 
 Phillips
 
 to the case here, Tapia’s dismissal occurred on February 2, 1989, when the county’s occupational health service found that she was not medically qualified for regular duty coupled with the fact that the sheriff did not then approve her for light duty. Accordingly, Tapia was entitled to retroactive reinstatement as of February 3, 1989, the day following the effective date of the dismissal as defined by section 31725.
 

 As we have noted, two trial courts ruled that Tapia was not required to present her claim under section 31725 to the county before she filed her action. For the reasons stated below, such rulings were erroneous. Tapia’s claim under section 31725 was one for retroactive salary and benefits, and thus was a claim for money. Under section 935,
 
 post,
 
 and applicable local county ordinances,
 
 post,
 
 such a claim required presentation to the county as a prerequisite to suit thereon.
 

 II.
 

 The Claim Presentation Requirements in Section 900 Et Seq.
 

 Section 945.4 provides in part that no suit for money or damages may be brought against a local public entity on a cause of action for which a claim is required to be presented until such claim has been presented and has been rejected by the public entity either in whole or in part.
 

 
 *383
 
 Where a petition for writ of mandate may seek either monetary damages or other extraordinary relief, failure to file a claim is fatal to the recovery of money damages.
 
 (Madera Community Hospital
 
 v.
 
 County of Madera
 
 (1984) 155 Cal.App.3d 136, 148 [201 Cal.Rptr. 768].)
 

 Section 905 provides in part that “[cjlaims by public employees for fees, salaries, wages, mileage or other expenses and allowances” are excepted from the claim presentation requirements for claims against a local public entity.
 

 Section 935 provides in part: “(a) Claims against a local public entity for money or damages which are excepted by Section 905 . . .
 
 and which are not governed by any other statutes or regulations expressly relating thereto,
 
 shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity. [][] (b) The procedure so prescribed may include a requirement that a claim be presented and acted upon as a prerequisite to suit thereon. If such requirement is included, any action brought against the public entity on the claim shall be subject to the provisions of Section 945.6 and Section 946.” (Italics added.)
 

 Pursuant to section 935, the county adopted an ordinance which was codified at San Bernardino County Code section 11.031 et seq. Section 11.031 provides in part: “There shall be presented ... as a prerequisite to suit against the County of San Bernardino, all claims for money or damages . . . which are . . . listed as exceptions in Section 905 . . .
 
 provided that the claims covered by this section are not governed by any other statutes or regulations expressly relating
 
 thereto.” (Italics added.) Section 11.032 provides in part: “Those claims required by Section 11.031 . . . shall be presented to the Board of Supervisors or the Risk Manager in accordance with and in the manner provided in Part 3 (commencing with section 900) of Division 3.6 of Title 1 of the California Government Code.” Section 11.033 provides: “No suit for money or damages may be brought against the County of San Bernardino on a cause of action for which a claim is required to be presented under Section 11.031 of this chapter until a written claim therefor has been presented to the Board of Supervisors or the Risk Manager and has been acted upon or has been deemed rejected, in accordance with the procedures prescribed by Section 11.032 of this chapter.”
 

 Both the court which heard the county’s demurrer and the court which heard the petition after it was at issue ruled that the foregoing requirements did not apply to Tapia’s claim because the claim was “governed by” section 31725, and therefore was excluded by section 935, subdivision (a). (“Claims . . . which are not
 
 governed by
 
 any other statutes or regulations expressly
 
 *384
 
 related thereto, shall be governed by the procedure prescribed by ... the local public entity.” (Italics added.))
 

 On appeal, the county contends that the trial court erred in finding that the county ordinance did not apply to Tapia’s claim. We agree. The county relies on
 
 California School Employees Assn.
 
 v.
 
 Azusa Unified School Dist.
 
 (1984) 152 Cal.App.3d 580 [199 Cal.Rptr. 635]
 
 (Azusa),
 
 where the court rejected the California School Employees Association’s (CSEA’s) argument that it was not required to file a claim with the school district under the district’s policy because the claim was governed by Education Code section 45203. (Education Code section 45203 required the district to pay wages to classified personnel on specified occasions when certificated personnel received regular pay.)
 

 The
 
 Azusa
 
 court held that CSEA’s claim was not governed by Education Code section 45203, because “[s]ection 45203
 
 does not prescribe the procedures for filing a claim for wages.
 
 Rather, this section only gives rise to the duty to pay wages.”
 
 Azusa, supra,
 
 152 Cal.App.3d 580, 587, fn. 3, italics added.)
 

 So it is in the case here. Tapia’s claim is not governed by section 31725, because section 31725 “does not prescribe the procedures for filing a claim for wages. Rather, this section only gives rise to the duty to [reinstate].”
 

 Tapia argues that the
 
 Azusa
 
 court’s reasoning does not apply to the case here, because Education Code section 45203 involved only the payment of wages, and section 31725 involves disability retirement and reinstatement to employment, with payment of back wages being incidental to the reinstatement.
 

 However, Tapia is focusing on the wrong language in
 
 Azusa.
 
 There, the court held that the claim was not governed by Education Code section 45203 because that section, like section 31725 here, “does not prescribe the
 
 procedures
 
 for filing a claim.” (Italics added.) The fact that section 31725 prescribes the
 
 substantive
 
 duty to reinstate, just as Education Code section 45203 prescribes the substantive duty to pay wages, is irrelevant to the failure to prescribe the procedures for presenting a claim. Accordingly, because section 31725 does not prescribe the procedures for presenting a claim, Tapia’s claim was not governed thereby, and Tapia was required to present a claim to the county under section 11.031 et seq. of the county code.
 

 Alternatively, Tapia contends, even if she were required to present a claim to the county and failed to do so, that her attorney’s June 18, 1990, and
 
 *385
 
 August 2, 1990, letters to the sheriff (the letters) constituted substantial compliance with the county’s claim presentation requirements. We do not agree, for the following reasons.
 

 First, the letters did not comply with section 11.032 of the county code,
 
 ante,
 
 which provides that a claim “shall be presented to the
 
 Board of Supervisors or the Risk Manager.”
 
 (Italics added.)
 

 Second, Tapia’s letters did not comply with section 915 of the Government Code which provides that a claim shall be presented to a local public entity by: “(1) Delivering it to the clerk, secretary or auditor thereof; or M] (2) Mailing it to such clerk, secretary or auditor or to the governing body at its principal office.”
 

 Third, even if the letters had complied with the foregoing requirements, they did not constitute a “claim relating to a[] cause of action” within the meaning of section 911.2. Tapia’s cause of action, as alleged in her petition, was for retroactive salary and benefits. Such cause of action did not accrue until: (1) the board denied her application for disability retirement,
 
 and
 
 (2) the board or the risk manager denied her request, after she returned to work, for retroactive salary and benefits.
 

 As to the board’s denial of Tapia’s application for disability retirement, such denial did not occur until some time between July 1 and July 19, 1990. Accordingly, Tapia’s letter of June 18, 1990, which was written
 
 before the denial,
 
 could not have constituted a claim relating to a cause of action, because no cause of action had yet accrued.
 

 As to the board or the risk manager’s denial of Tapia’s request for back-pay and benefits, such denial may never have occurred, because the request was contained in Tapia’s August 2, 1990, letter directed to the sheriff and not to the board or the risk manager. Even if we assume, for the sake of argument, that Tapia’s August 2 letter was properly directed, then the request therein was denied by operation of law 45 days after Tapia received no response to the letter. (§ 911.6.) The letter itself, with its request that the sheriff “arrange for the restoration of back pay and benefits,” cannot reasonably be construed as a claim; the letter did not contemplate that Tapia’s request would be denied, much less that such denial would result in litigation.
 
 (Phillips
 
 v.
 
 Desert Hospital Dist.
 
 (1989) 49 Cal.3d 699, 707-708 [263 Cal.Rptr. 119, 780 P.2d 349].)
 

 After Tapia received no response to her August 2 letter,
 
 she failed to contact any county agency or official.
 
 In other words,
 
 she did not present a claim
 
 after her cause of action had accrued.
 

 
 *386
 
 Tapia relies on
 
 Jamison
 
 v.
 
 State of California
 
 (1973) 31 Cal.App.3d 513 [107 Cal.Rptr. 496], and
 
 Azusa, supra.
 
 In
 
 Jamison,
 
 a decision of this court, the plaintiff was injured in a collision between the vehicle in which he was riding and a truck owned by the State Department of Water Resources, driven by one of its employees. Although the plaintiff filed a timely claim, it was with the Department of Water Resources and not with the State Board of Control, as required by section 915. The state moved for judgment on the pleadings on the ground that the claim had been filed with the wrong agency; the superior court dismissed the action. The plaintiff appealed, contending that he had substantially complied with section 915. We agreed and reversed the decision of the trial court, reasoning that, “[i]nasmuch as the claim was in proper form and was timely filed with the agency causing the wrong, plaintiff substantially complied with section 915 of the Government Code.” (31 Cal.App.3d at pp. 518-519.)
 

 In the case here,
 
 Tapia did not file any claim,
 
 much less a timely claim in proper form. Accordingly,
 
 Jamison
 
 does not apply.
 

 In
 
 Azusa, supra,
 
 the field representative for the petitioner employee association wrote the assistant superintendent of the respondent school district that the district’s failure to pay certain classified employees who were off work on numerous professional and minimum days violated Education Code section 45203. The assistant superintendent responded that the district’s position was that it was in violation of Education Code section 45203 for minimum days but not for professional days, and that it agreed to pay the wages for minimum days. The field representative wrote the assistant superintendent again, stating the association’s position that the district’s failure to pay for professional days was a violation of Education Code section 45203. The assistant superintendent responded that the district’s position was that there was no such violation.
 

 The
 
 Azusa
 
 court held that the foregoing letters substantially complied with the claim presentation requirements. The court noted that the primary function of such requirements was ‘“to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims.’ ”
 
 (Azusa, supra,
 
 152 Cal.App.3d 580, 588.) The court concluded that the “series of communications” between the employee association and the district satisfied such function because they apprised the district of the employees’ claim and enabled the district to investigate the claim and to settle part of the dispute.
 
 (Ibid.)
 

 Here, of course, there was no “series of communications” between Tapia and the board or the risk manager. Moreover, Tapia’s August 2 letter to the
 
 *387
 
 sheriff did not apprise the sheriff, much less the board or the risk manager, of “imminent legal action,” and therefore did not enable the board or the risk manager to investigate and possibly settle the claim. Accordingly, the doctrine of substantial compliance invoked in
 
 Azusa
 
 does not apply here.
 

 Based upon the foregoing analysis, because Tapia did not file a claim, we hold that the issue of substantial compliance is not presented by this record.
 

 As we have noted, appellants demurred to Tapia’s petition, on the ground that
 
 she had not alleged compliance
 
 with the claim presentation requirements. “Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.”
 
 (Snipes
 
 v.
 
 City of Bakersfield
 
 (1983) 145 Cal.App.3d 861, 865 [193 Cal.Rptr. 760].) Here, the trial court overruled the demurrer, on the ground that Tapia’s claim was not subject to the claim presentation requirements. However, for the reasons stated above, the claim was subject to such requirements; thus, the court should have sustained the demurrer. Had it done so, affording leave to amend, Tapia would not have been able to allege either compliance or circumstances excusing compliance.
 

 At the hearing on Tapia’s petition, appellants again argued, to a different trial court, that Tapia had not complied with the claim presentation requirements. That court also ruled that Tapia’s claim was not subject to such requirements. Because the claim was subject to such requirements, and because Tapia did not comply or substantially comply therewith, the court should have dismissed the petition. Accordingly, we shall reverse the judgment with directions to the court to dismiss the petition.
 

 Disposition
 

 The judgment is reversed. The trial court is directed to enter a judgment dismissing Tapia’s petition.
 

 Ramirez, P. J., and Dabney, J., concurred.
 

 A petition for a rehearing was denied October 14, 1994, and respondent’s petition for review by the Supreme Court was denied January 5,1995. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 *
 

 Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. code, § 75028.1), sitting under assignment by the chairperson of the Judicial Council.
 

 [1]
 

 According to records from the Workers’ Compensation Appeals Board, of which we take judicial notice, Tapia was away from work from
 
 November
 
 30, 1987, to July 20, 1990; the dates in the judgment incorrectly reflect an absence from
 
 January
 
 30, 1987, to July 20, 1990. Tapia acknowledges the error.
 

 [2]
 

 All statutory references are to the Government Code unless otherwise indicated. Section 31725 provides:
 

 “Permanent incapacity for the performance of duty shall in all cases be determined by the board.
 

 “If the medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member’s application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days of the mailing of such notice. If such petition is not filed or the court enters judgment denying the writ, whether on the petition of the employer or the member, and the employer has dismissed the member for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal.”
 

 [3]
 

 In the memorandum of points and authorities in support of her petition, Tapia characterized her absence as a
 
 “voluntary
 
 medical leave of absence” (italics in original), and the county agreed with that characterization.