[No. B212470. Second Dist., Div. Three. Mar. 11, 2010.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Appellants, v.
TORRANCE UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Michael R. Clancy and Charmaine L. Huntting for Plaintiffs and Appellants.

Parker & Covert, Spencer E. Covert and Jonathan J. Mott for Defendants and Respondents.

## OPINION

**KITCHING, J.—**

### INTRODUCTION

The California School Employees Association, its Torrance chapters Nos. 19 and 845, and its members Roberta Belyea and Anna San Roman (collectively the union) contend that Torrance Unified School District, its governing board, and its superintendent George Mannon (collectively the district) violated Education Code section 45203[1] by failing to pay regular wages to classified employees[2] who did not work on staff development

---

[1] Unless otherwise stated, future section references are to the Education Code. Section 45203 provides in part: "Notwithstanding the adoption of separate work schedules for the certificated and the classified services, on any schoolday during which pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day."

[2] "There are two general categories of public school employees under California law: certified employees, or teachers, and classified employees, who are not subject to the certification requirements of teachers." (*Gately v. Cloverdale Unified School Dist.* (2007) 156 Cal.App.4th 487, 493 [67 Cal.Rptr.3d 377].)

student-free days. The superior court denied the union's petition for a writ of mandate and entered judgment for the district. We affirm.

## FACTS

The material facts are undisputed. In the 2006–2007 school year, the district provided 180 days of instruction to students on Mondays through Fridays from September 7, 2006, to June 21, 2007. School was closed and no credentialed teachers worked on Saturdays, Sundays, statewide school holidays, and local school holidays designated by the district pursuant to section 37220, subdivision (a)(13), namely the days before and after Thanksgiving, winter break from December 22, 2006, to January 5, 2007, and spring break from April 9 to April 13, 2007.

Teachers were paid for working 185 days from September 5, 2006, to June 22, 2007. In addition to the 180 instructional days when students were present, teachers worked on September 5, 2006, two days before classes started, and June 22, 2007, the day after classes ended. Teachers also worked on three staff development student-free days, also known as in-service days, which were on September 6, 2006, October 9, 2006, and February 2, 2007. In-service days were not statewide or local school holidays.

Different classified employees worked a different number of days depending on their classification. For example, adult education instructional assistants were paid for 167 days, while child development instructors were paid for between 231 and 235 days, depending on the location at which they worked.

This case involves three categories of classified employees—paraeducators, instructional assistants, and educational assistants. These employees were not paid on the second and third staff development student-free days on October 9, 2006, and February 2, 2007.[3]

## ISSUE

The essential issue in this case is whether the classified employees who did not work on staff development student-free days on October 9, 2006, and February 2, 2007, are entitled to be paid regular wages for those days pursuant to section 45203.

---

[3] Under the contracts between the district and the union, all classified workers except adult education instructional assistants were paid for the first staff development student-free day on September 6, 2006, whether or not they worked that day. The union does not seek recovery of regular wages for adult education instructional assistants for September 6, 2006, because such workers began working on September 11, 2006.

## DISCUSSION

### 1. *Standard of Review*

■ " 'A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty.' " (*American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 261 [24 Cal.Rptr.3d 285].) Although a writ of mandate is generally not available in proceedings involving wage claims by school district employees, it is a proper remedy in this case "because the underlying dispute concerns the proper construction of section 45203 giving rise to the official duty to pay the wage claims." (*California School Employees Assn. v. Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580, 590 [199 Cal.Rptr. 635] (*Azusa*).)

Whether the district had a ministerial duty to pay certain classified employees wages for staff development student-free days depends on the meaning of section 45203. Because the material facts are undisputed, we review the trial court's interpretation of section 45203 de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

### 2. *Principles of Statutory Interpretation*

■ "The fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' [Citation.] The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment." (*People v. Cruz* (1996) 13 Cal.4th 764, 774–775 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

" 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation] . . . .' " (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519].)

When "the plain meaning of a statute is insufficient to resolve a question of interpretation, we may review the legislative history of the statute and the wider historical circumstances of its enactment, as well as the public policy

underlying the law." (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 21 [92 Cal.Rptr.3d 441].)

> 3. *Section 45203 Does Not Require the District to Pay Classified Workers Who Did Not Work on Staff Development Student-free Days*

Section 45203 provides in relevant part: "Notwithstanding the adoption of separate work schedules for the certificated and the classified services, *on any schoolday during which pupils would otherwise have been in attendance* but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day." (Italics added.) The district contends that the staff development student-free days are not schooldays "during which pupils would otherwise have been in attendance" within the meaning of section 45203. We agree.

■ In order to obtain critical funding from the state, the district must provide at least 180 days of instruction to its students per academic year. (See § 46200, subd. (c).) ■ The district thus scheduled 180 days of instruction for the 2006–2007 school year. The staff development student free days were *in addition to*, not in lieu of, the 180 days of instruction. These days thus were not schooldays "during which pupils would otherwise have been in attendance." Accordingly, under the plain meaning of the statute, as applied here, classified employees who did not work on staff development student-free days were not entitled to be paid regular wages for such days.

This conclusion is supported by reviewing the broader context of the statutory language in dispute, as well as the relevant legislative history. Section 45203 is in title 2, division 3, part 25, chapter 5 of the Education Code. This chapter, beginning with section 45100, relates to classified employees. Section 45203 relates to *paid holidays* for classified employees.

Public schools are closed on certain statewide school holidays. (§ 37220, subd. (a)(1)–(12).) In addition, public schools are closed on "[a]ny other day designated as a holiday by the governing board of the school district." (§ 37220, subd. (a)(13).)

Section 45203's predecessor statute, former section 13656, was enacted in 1963. (Stats. 1963, ch. 96, § 1, p. 728.) Former section 13656 provided that *classified* employees were entitled to be paid on statewide school holidays and local school holidays declared by the governing board of the school

district pursuant to former section 5202.[4] (Stats. 1963, ch. 96, § 1, p. 728.) In 1967, former section 13656 was amended to extend to any holiday declared for classified *or certificated* employees. (Stats. 1967, ch. 578, § 1, p. 1925, italics added.)

In 1974, the Attorney General addressed the following question: "Are holidays declared under Education Code [former] section 877 or 5202 for classified as well as certificated personnel?"[5] (57 Ops.Cal.Atty.Gen. 116 (1974).) The question arose after the Wheatland Union High School District declared October 8, 1973 (Columbus Day), a local holiday for certificated employees but not a local holiday for classified employees. The Attorney General opined that because former section 13656 applied to both classified and certificated employees, classified employees were entitled to be paid for local school holidays declared for certificated employees. (57 Ops.Cal.Atty.Gen., *supra*, at pp. 118–119.)

Shortly after the Attorney General issued its opinion, the Legislature expressed concerns regarding the opinion's potentially wide-reaching consequences. Under the Attorney General's opinion, many classified workers who normally worked during the Christmas and Easter recess periods would arguably be working on local *holidays*. (See Assem. Com. on Education, Analysis of Sen. Bill No. 2237 (1973–1974 Reg. Sess.) as amended June 18, 1974.) Likewise, under former section 5202, the closure of school due to climatic conditions would be considered a local holiday. (See Sen. Com. on Industrial Relations, Analysis of Sen. Bill No. 2237 (1973–1974 Reg. Sess.) as amended June 5, 1974 ["In addition, the Opinion [57 Ops.Cal.Atty.Gen., *supra*, 116] indicated that school closure because of climatic conditions would be considered holidays under the Code provisions"].) This was significant because a classified employee was entitled under former section 13656 to be paid "in addition to the regular pay received for the holiday, at the rate of time and one-half his regular rate of pay."[6] (Stats. 1973, ch. 520, § 2, p. 1001.)

In response to the Attorney General's opinion, Senate Republican Floor Leader Fred W. Marler, Jr., introduced Senate Bill No. 2237 (1973–1974 Reg.

---

[4] Former section 5202 provided: "Notwithstanding any other provisions of Sections 5201 to 5210, inclusive, and Section 5901, the governing board of any school district may declare a holiday in the public schools under its jurisdiction when good reason exists."

[5] Former section 877 provided: "The county board of education or county superintendent of schools may declare a holiday in the schools or offices operated by the county superintendent of schools whenever good reason exists."

[6] Section 45203 provides: "When a classified employee is required to work on any of these holidays, he or she shall be paid compensation, or given compensating time off, for such work, in addition to the regular pay received for the holiday, at the rate of time and one-half the employee's regular rate of pay."

Sess.) (Sen. Bill 2237). (Sen. Marler, sponsor of Sen. Bill 2237, letter to Governor, Sept. 11, 1974.) This bill amended former section 13656 in three major ways. First, the amended statute stated that school recesses during the Christmas and Easter periods—which could be designated as local school holidays—should not be considered holidays for classified employees who were normally required to work during that period. Second, former section 13656 was amended to expressly allow school districts to adopt separate work schedules for certificated and classified employees. Finally, the statute was amended to include the language in dispute in this case: "Notwithstanding the adoption of separate work schedules for the certificated and the classified services, on any schoolday during which pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day." (Compare Stats. 1973, ch. 520, § 2, p. 1001 with Stats. 1974, ch. 1257, § 1, pp. 2728–2729; Assem. Com. on Education, Analysis of Sen. Bill 2237 (1973–1974 Reg. Sess.) as amended June 18, 1974.) The California School Employees Association opposed Sen. Bill 2237. (Sen. Marler, letter to Governor; Assem. Com. on Education, Analysis of Sen. Bill 2237 (1973–1974 Reg. Sess.) as amended June 18, 1974.)

In a letter to Governor Reagan supporting Sen. Bill 2237 after it was passed by the Legislature, Senator Marler stated: "You presently have before you for your consideration Senate Bill 2237 which would allow school boards to treat their classified personnel differently from certificated personnel with respect to work schedules; paid vacation time during Christmas and Easter recesses; and special work days *when teachers* and students *do not come to school*, but classified personnel are needed for the necessary operation and maintenance of the school facilities. [¶] . . . [¶]

". . . Representatives of the California School Employee Association do not agree with my feelings on the issue, but I think it boils down to a philosophical difference of opinion. The bill will benefit both the classified employee and the school district. It guarantees the classified employee regular pay whether or not he is required to work when certificated employees receive regular pay (*some classified employees have not been paid when told to stay home because of climatic conditions, etc.*) *and it eliminates the costs to school districts for overtime* which is presently required under law to be paid to those classified employees required to work *when certificated employees are not at school.*" (Sen. Marler, sponsor of Sen. Bill 2237, letter to Governor, Sept. 11, 1974, italics added.)

The plain language of section 45203, when read in context, and the legislative history of the statute indicate that the phrase "any schoolday

during which pupils would otherwise have been in attendance" refers to days declared as *local school holidays*, such as Columbus Day or a day with severe climatic conditions, on which both students and teachers do not attend school. Section 45203 provides that if teachers receive regular pay on such days, classified employees shall also receive *regular pay* whether or not they are required to report for duty. This provision does not apply to staff development student-free days scheduled by the district because these days are not *holidays*; they are days on which teachers work. Accordingly, classified employees of the district who do not work on staff development student-free days are not entitled to be paid regular wages on such days.

The union argues that this case presents the identical issue presented in *Azusa*. There, the school district designated six days as either "local holidays for students" or "professional/conference days." Teachers were required to work on those days and were paid for working. Division Two of this court held that classified employees who did not work on those six days were entitled to be paid regular wages pursuant to section 45203. (*Azusa, supra*, 152 Cal.App.3d at pp. 593–595.)

The district argues that *Azusa* is distinguishable because in that case the local holidays for students and professional/conference days were in lieu of student instruction days. Therefore, the district argues, such local holidays and professional/conference days were days on which pupils "would otherwise have been in attendance." Although the *Azusa* opinion states that the six days "fell within the regular school attendance calendars" (*Azusa, supra*, 152 Cal.App.3d at p. 583), the opinion does not clearly state whether those days were in lieu of student instruction days. We therefore cannot determine whether the district's argument is correct.

We nevertheless reject the union's reliance on *Azusa*. The *Azusa* court did not consider the context of the disputed language of section 45203, that is, that the statute relates to paid holidays for classified employees. The court also did not address whether local holidays for students and professional/ conference days were in lieu of student instruction days, or consider much of the legislative history that we have reviewed. Hence, to the extent *Azusa* conflicts with our holding here, we decline to follow it.

For the reasons we have stated, we hold that the classified employees who did not work on staff development student-free days were not entitled to be paid regular wages for those days pursuant to section 45203.

## DISPOSITION

The judgment is affirmed. The district is awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.