[No. C004901. Third Dist. Apr. 23, 1990.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, FEATHER RIVER CHAPTER NO. 342 et al., Plaintiffs and Appellants, v. OROVILLE UNION HIGH SCHOOL DISTRICT et al., Defendants and Respondents.

COUNSEL

Maureen C. Whelan and Peter A. Janiak for Plaintiffs and Appellants.

Little, Mendelson, Fastiff & Tichy, Richard J. Currier, Sharon H. Seay and C. Anne Hudson for Defendants and Respondents.

OPINION

MARLER, J.—California School Employees Association, Feather River Chapter No. 342 and Scott Atkinson (petitioners) appeal from a judgment of dismissal entered after the court sustained a demurrer to their petition for a writ of mandate (Code Civ. Proc., § 1085) without leave to amend.[1] Below, petitioners claimed that Atkinson, a groundskeeper with the Oroville Union High School District (District), had been improperly terminated without notice and a hearing and sought to compel the District, its governing board and Superintendent William Gibson (respondents) to reinstate him. Respondents successfully demurred on the ground the petition failed to state a cause of action as the facts alleged therein demonstrated that Atkinson was not a permanent employee and therefore not entitled to notice and a hearing prior to being terminated. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

According to the petition and the exhibits incorporated therein, Atkinson was hired by the District as a substitute groundsman on March 31, 1986, temporarily replacing Francisco Bermudez, who was on worker's compensation leave. On October 2, 1986, Atkinson became a limited-term employee, began receiving benefits and had retirement benefits deducted from his salary. For reasons not apparent from the appellate record, Bermudez did not return to work for the District and his last day as an employee was March 25, 1987. The District advertised the availability of the permanent position previously held by Bermudez and hired Atkinson on April 10, 1987, as a probationary classified employee. According to regulations promulgated by the District, a probationary employee does not become permanent until the employee has successfully completed a six-month probationary period. On September 28, 1987, Atkinson was terminated without notice and a hearing.

---

[1] Petitioners filed a premature notice of appeal on July 21, 1988, which we construe to have been filed immediately after the entry of judgment on July 25, 1988. (Cal. Rules of Court, rule 2(c).)

After the District's board of trustees approved Atkinson's termination effective September 30, 1987, Atkinson filed his petition for a writ of mandate.

## DISCUSSION

The primary issue on appeal is whether Atkinson's petition alleged facts demonstrating that he was a permanent employee. The Education Code provides that permanent classified employees are entitled to notice and a hearing prior to being terminated. (Ed. Code, §§ 45113, 45101, subd. (e); all future undesignated section references are to the Education Code.)[2] No similar protections are afforded probationary employees by the Education Code and a District regulation specifically provides that probationary employees do not have the same right to a hearing as permanent employees of the classified service. The District argues Atkinson was a probationary employee and could therefore be terminated without the notice and hearing provided for in section 45113. They are correct. Atkinson was hired as a probationary classified employee on April 10, 1987, and had not completed the designated six-month probationary period at the time he was terminated on September 28, 1987.

Atkinson argues his probationary period began in mid-February, not April 10, 1987, and therefore he became a permanent employee in August 1987 prior to his termination. He believes he became a probationary employee in mid-February because at that time he had worked 195 days for the District. Atkinson relies on section 45103 in support of his contention.

---

[2] Section 45113 provides in pertinent part: "The governing board of a school district shall prescribe written rules and regulations, governing the personnel management of the classified service, which shall be printed and made available to employees in the classified service, the public, and those concerned with the administration of this section, whereby such employees are designated as permanent employees of the district after serving a prescribed period of probation which shall not exceed one year. [¶] Any employee designated as a permanent employee shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board, but the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive. [¶] The governing board shall adopt rules of procedure for disciplinary proceedings which shall contain a provision for informing the employee by written notice of the specific charges against him, a statement of his right to a hearing on such charges, and the time within which such hearing may be requested which shall be not less than five days after service of the notice to the employee, and a card of paper, the signing and filing of which shall constitute a demand for hearing, and a denial of all charges. The burden of proof shall remain with the governing board, and any rule or regulation to the contrary shall be void. . . ."

Section 45101, subdivision (e) provides: " 'Disciplinary action' includes any action whereby an employee is deprived of any classification or any incident of any classification in which he has permanence, including dismissal, suspension, demotion, or any reassignment without his voluntary consent, except a layoff for lack of work or lack of funds."

Section 45103 provides in pertinent part: "The governing board of any school district shall employee persons for positions not requiring certifications qualifications. The governing board shall, . . . classify all such employees and positions. The employees and positions shall be known as the classified service.[3] Substitute and short-term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service. . . . [¶] 'Substitute employee,' . . . means any person employed to replace any classified employee who was temporarily absent from duty. . . . [¶] 'Seventy-Five percent of a school year' means 195 working days, including holidays, sick leave, vacation and other leaves of absences, irrespective of number of hours worked per day."

Assuming arguendo that a substitute employee becomes a probationary employee after having been employed by the District for 195 days, it is nevertheless clear from the plain language of section 45103 that the 195 days must be served within 1 school year. A school year begins on July 1 and ends on June 30. (§ 37200.) Atkinson did not serve 195 days in the 1985-1986 school year as he was only employed between March 31, 1986, and June 30, 1986. He did not serve 195 days as a substitute in the 1986-1987 school year either, as he was hired as a probationary employee on April 10, 1987. At this point his status changed from a substitute (temporarily replacing a classified employee) to a probationary employee who would become permanent at the end of six months. According to one of the exhibits incorporated by reference in Atkinson's petition, between July 1, 1986, and April 10, 1987, Atkinson had only been employed 191.5 days as a substitute.

Atkinson argues that section 45103 should be construed so that a substitute employee need not serve all 195 days in a single school year prior to being made part of the classified service. ■ However, it is well established that when statutory language is clear and unambiguous there is no need for construction and courts should not indulge in it. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) "This principle is but a recognition that courts ' "must follow the language used and give to it its plain meaning, whatever may be

[3]Section 45101, subdivision (a) provides: " 'Classification' means that each position in the classified service shall have a designated title, a regular minimum number of assigned hours per day, days per week, and months per year, a specific statement of the duties required to be performed by the employees in each position, and the regular monthly salary ranges for each such position." Employees in the classified service enjoy a number of benefits guaranteed by statute, including paid holidays (§ 45203), paid vacation (§ 45197), sick leave (§ 45191), increased pay for overtime (§ 45128) and job security (§ 45113). Jobs in the classified service apparently include custodians, bus drivers, cafeteria workers, clerical staff, some instructional aides, and other nonteaching and nonadministrative positions.

thought of the wisdom, expediency, or policy of the act, even if it appears probable that a different object was in the mind of the legislature." ' [Citation.]" *(People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].) ■ Moreover, it is presumed that every word, phrase and provision used in a statute was intended to have some meaning and to perform some useful office, and a construction making some words surplusage is to be avoided. *(Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228-229 [111 Cal.Rptr. 398].)

■ In the present case, the unambiguous language of the statute provides that substitute employees shall not be a part of the classified service where they have been "employed and paid for less than 75 percent of *a school year.*" (§ 45103; italics added.) In other words, the substitute employee must be employed 195 days in a single school year, otherwise the use of the term "school year" would be mere surplusage.

Next, without citation to authority, Atkinson argues that all of the days he worked as a substitute during the 1986-1987 school year should be counted as part of his probationary period. Since a probationary period cannot exceed one year (§ 45113), Atkinson claims he became a permanent employee on July 1, 1987, prior to his termination on September 28, 1987. We disagree.

While working as a substitute groundskeeper, Atkinson was not serving as a probationary employee. A substitute replaces a classified employee who is on temporary leave (i.e., one who will be returning to displace the substitute). A probationary employee is one who will become permanent after a six-month probationary period assuming the employee's performance was satisfactory. Atkinson did not become a probationary employee until April 10, 1987. Only after Bermudez had terminated his permanent employment with the District was it contemplated that Atkinson would become a permanent groundskeeper. Only at that time did the District have reason to evaluate whether Atkinson would make an acceptable permanent employee as opposed to a temporary one. The District was entitled to the six-month probationary period to make its evaluation.

It appears Atkinson's argument may be based on section 44918, a section pertaining to certificated employees[4] and not to Atkinson. Section 44918 provides in pertinent part: "Any employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent

---

[4] A certificated employee is a person, such as a teacher, who holds one or more documents such as a certificate, a credential, or a life diploma, which singly or in combination license the holder to engage in the school service designated in the document or documents. (§ 44006.)

of the number of days the regular schools of the district were maintained in such school year and has performed the duties normally required of a certificated employee of the school district, shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year." Since the Legislature did not enact a similar statute for noncertificated classified employees, it is reasonable to assume it did not intend such employees to have the same right to include the time worked as a substitute in their period of probation.

Generally, for a writ of mandate to issue there must be a clear, present and usually ministerial duty on the part of the defendant and a clear, present and beneficial right in the plaintiff to performance of that duty. (Code Civ. Proc., § 1085; *Taylor* v. *Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710].) As the facts alleged in Atkinson's petition demonstrate the District had no duty to provide him with notice and a hearing prior to terminating him and no duty to reinstate him, Atkinson has failed to state a cause of action entitling him to a writ of mandate. Therefore, the demurrer to the petition was correctly sustained without leave to amend.

Disposition

The judgment is affirmed.

Sparks, Acting P. J., and Davis, J., concurred.