[No. G032195. Fourth Dist., Div. Three. Nov. 30, 2004.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE SOUTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Part II of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

578

COUNSEL

Michael R. Clancy, Madalyn J. Frazzini, Charmaine L. Huntting and Maureen C. Whelan for Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo and Warren S. Kinsler for Defendant and Respondent.

OPINION

**ARONSON, J.—** ▪ Education Code section 88003[1] provides that full-time, nonteaching community college positions qualify for "classified service," entitling these employees to various job protections and benefits, such as vacation and sick leave. "Short-term" employees who work more than 75 percent of a college year also are entitled to classified status. (§ 88003.) ▪ The issue presented here is whether "substitute employees" similarly qualify for classified status if they work more than 75 percent of the academic year while temporarily replacing absent classified employees.

The California School Employees Association (CSEA) and three substitute nonacademic employees who worked 195 days or more during the college year appeal the denial of their writ of mandate to compel the South Orange County Community College District (the District) to recognize the workers as "classified" employees. Besides reclassification, CSEA sought "lost wages, benefits . . . and all other emoluments of employment" and reinstatement for one of the claimants whose employment allegedly had been terminated. The District contends section 88003 excludes substitute employees from classified service regardless of the length of their service. It also argues CSEA's claim is barred by res judicata, collateral estoppel, laches, and failure to provide notice under the government claims act. (Gov. Code, § 900 et seq.)

▪ We conclude that section 88003 entitles substitute workers to classified employee status if they work more than 75 percent of the college year. We also conclude the District was entitled to notice under the government claims act. Because the failure to provide notice does not affect CSEA's claim for reclassification under section 88003, we reverse the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

The District's seven-member governing board oversees Irvine Valley College and Saddleback College, and employs approximately 1,100 teachers and

---

[1] All further statutory references are to the Education Code unless otherwise noted.

525 full-time classified employees who provide nonteaching services. Per section 88003, substitute employees and short-term workers employed for less than 75 percent of the college year were not entitled to classified service designation. According to the District, Samuel Hamblen, Alfredo Osuna, and Gerald Schwab were District employees falling within the latter category.

The District hired Hamblen as a substitute warehouse worker during the 1997–1998 school year. Substituting for several classified employees, Hamblen worked 222 days during the college year. The District hired Hamblen in August 1998 as a probationary classified worker after he submitted an application and interviewed for the position. Before his hiring, the District did not consider Hamblen a classified employee.

The District hired Osuna as a substitute custodian and during the 1998–1999 school year, he worked 229 days while filling in for various employees. In August 1999, the District hired Osuna as a probationary employee after he participated in the competitive hiring process. As with Hamblen, the District did not recognize Osuna as a classified employee based on his service during the previous year.

Schwab worked as a maintenance worker for the District from 1996 until July 1999. According to his declaration, he worked over 195 days in each of those years, but did not specify whether it was as a substitute or short-term employee. The District disputes Schwab's claim he was discharged in May 1999, claiming it never hired him as a regular or probationary employee, even though Schwab applied for several openings. Schwab claimed the District did not consider him a classified employee, therefore, he was not given a written notice of cause or provided a hearing to contest his discharge.

In 1999, CSEA, Hamblen, Osuna, and Schwab, citing section 88003 and provisions of CSEA's collective bargaining agreement (CBA) with the District, filed a formal grievance, alleging the trio had earned classified status by working over 195 days as substitutes during the academic year. The dispute proceeded to an administrative hearing, with the arbitrator concluding the CBA was too ambiguous to support petitioners' claims they were entitled to classified status. The arbitrator declined to interpret section 88003, explaining an arbitrator's role should be confined to conventional contract interpretation, and suggesting the superior court should decide the issue.

In October 2001, CSEA and the individual petitioners sought a writ of mandate to compel the District to award classified status and lost wages to Hamblen, Osuna, and Schwab. The trial court rejected the petition. Interpreting section 88003, the trial court concluded "[t]he phrase, 'employed and paid for less than 75 percent of a college year' does not modify the term

'substitute' in section 88003. Rather, that phrase modifies only the term 'short-term employee.' " The court also found relief barred because the individual petitioners failed to comply with the notice provisions of the Tort Claims Act (Gov. Code, § 935). This appeal followed.

## II

### ESTOPPEL AND LACHES*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### EDUCATION CODE SECTION 88003

This case concerns the proper interpretation of section 88003. The statute provides, in relevant part, as follows: "The governing board of any community college district shall employ persons for positions that are not academic positions. The governing board . . . shall classify all those employees and positions. The employees and positions shall be known as the classified service. *Substitute and short-term employees, employed and paid for less than 75 percent of a college year, shall not be a part of the classified service.*" (Italics added.)

█ The Legislature's statutory scheme "defines a classified position by describing what it is not. Thus, '[e]very position not defined by the regulations of the board of governors as an academic position and not specifically exempted from the classified service according to the provisions of Section 88003 or 88076 shall be classified as required by those sections and shall be a part of the classified service.' (§ 88004.)" (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 337, fn. 4 [33 Cal.Rptr.2d 109, 878 P.2d 1321].)[2]

---

*See footnote, *ante*, page 574.

[2] " 'Classification' means that each position in the classified service shall have a designated title, a regular minimum number of assigned hours per day, days per week, and months per year, a specific statement of the duties required to be performed by the employees in each such position, and the regular monthly salary ranges for each such position." (§ 88001, subd. (a).)

With this legislative framework in mind, the parties agree short-term employees[3] working less than 75 percent of the college year[4] are specifically excluded from classified status. Conversely, short-term employees working more than 75 percent of the academic year qualify for classified service because they are not specifically excluded under the statute.

The issue here is whether substitute employees are subject to the same requirement that they must work more than 75 percent of the college year[5] to gain classified status, or whether they are excluded altogether. The trial court adopted the District's argument that the language "employed and paid for less than 75 percent of a college year" did not modify the term "substitute," but only the phrase's immediate antecedent, "short-term employee." Thus, a substitute employee cannot qualify for classified status regardless of how many days the substitute worked during the academic year. We disagree.

We review issues of statutory interpretation de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].) The primary purpose of statutory construction is to ascertain the Legislature's intent. (*Id.* at p. 919.) We turn first to the statutory language, "being careful to give the statute's words their plain, commonsense meaning. [Citation.] If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." (*Ibid.*) But if our analysis of the statutory language "leaves doubt about meaning, we may consult other evidence of the Legislature's intent, such as the history and background of the measure." (*People v. Birkett* (1999) 21 Cal.4th 226, 231–232 [87 Cal.Rptr.2d 205, 980 P.2d 912].)

In our view, the statutory language is clear. Here, following routine grammatical construction, "substitute" is an adjective modifying the word "employees." Consequently, the statute can be read as follows: "Substitute . . . employees, employed and paid for less than 75 percent of a college year, shall not be a part of the classified service." Treating the word "substitute" as a noun, the trial court concluded the clause "employed and

---

[3] Section 88003 defines a short-term employee as "any person who is employed to perform a service for the district, upon the completion of which, the service required or similar services will not be extended or needed on a continuing basis. Before employing a short-term employee, the governing board, at a regularly scheduled board meeting, shall specify the service required to be performed by the employee pursuant to the definition of 'classification' in subdivision (a) of Section 88001, and shall certify the ending date of the service. The ending date may be shortened or extended by the governing board, but shall not extend beyond 75 percent of a school year."

[4] The statute defines 75 percent of the college year as follows: "195 working days, including holidays, sick leave, vacation and other leaves of absences, irrespective of number of hours worked per day."

[5] Section 88003 defines a substitute employee as "any person employed to replace any classified employee who is temporarily absent from duty."

paid for less than 75% of a college year" modified only the phrase "short-term employee." But under this interpretation the pertinent part of the statute would read: "Substitute . . . shall not be a part of the classified service." This makes no grammatical sense unless the reader pluralizes the word "substitute." Similarly, to achieve the District's desired interpretation, a reader could assume the word "employees" implicitly follows "substitute," so the sentence would read, "Substitute [employees] and short-term employees, employed and paid for less than 75 percent of a college year, shall not be a part of the classified service." Our role, however, is not to redraft the statute, but "to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts 'may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'" (*County of Santa Barbara v. Connell* (1999) 72 Cal.App.4th 175, 180 [85 Cal.Rptr.2d 43].)

The District agreed at oral argument that the word "substitute" is an adjective modifying employees, but contends the "last antecedent rule" requires us to conclude the phrase "short-term employees" is the only term modified by the clause "employed and paid for less than 75 percent of a college year." We are not persuaded.

■ The last antecedent rule, a hoary rule of statutory construction, "provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191] (*White*); *Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 881 [80 Cal.Rptr.2d 589].) As with most rules, certain exceptions apply, and here they compel rejection of a mechanical application of the last antecedent rule. Indeed, these exceptions underscore CSEA's argument the word "substitute" is modified by the clause "employed and paid for less than 75 percent of a college year."

■ One exception stems from the Legislature's selection of certain punctuation. As our high court observed, "[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." (*White, supra,* 31 Cal.3d at p. 680; *People v. Steffens* (1998) 62 Cal.App.4th 1273, 1286 [73 Cal.Rptr.2d 314]; 2A Sutherland, Statutes and Statutory Construction (Singer, 2000) § 47.43, p. 373.) Here, the qualifying phrase "employed and paid for less than 75 percent of a college year" is separated from its antecedents by a comma, evidence that the qualifying clause applies to both "substitute and short-term employees." Our Supreme Court has noted another exception: the Legislature's "use of the word 'or' in a statute indicates an intention to use it disjunctively so as to

designate alternative or separate categories." (*White, supra,* at p. 680.) As CSEA points out, the words "substitute" and "short-term" are joined by the conjunction "and," evidencing an intent that the terms be viewed as a single, joint "last antecedent."

Other courts have assumed the statute provides that substitute employees qualify for classified service if they work more than 75 percent of the academic year. In *California School Employees Assn. v. Oroville Union High Sch. Dist.* (1990) 220 Cal.App.3d 289 [269 Cal.Rptr. 90] (*Oroville*), the appellate court interpreted section 45103, an identically worded measure applying to elementary and secondary level employees. There, the court rejected CSEA's claim a substitute employee need not serve all 195 days in a single school year to earn classified status. In reaching this result, the court observed "the *unambiguous* language of the statute provides that substitute employees shall not be a part of the classified service where they have been 'employed and paid for less than 75 percent of [the academic year].' " (*Id.* at p. 294, italics added.) *California Sch. Employees Assn. v. Trona Joint Unified Sch. Dist.* (1977) 70 Cal.App.3d 592 [138 Cal.Rptr. 852], implicitly reached the same conclusion. There, two substitute employees argued they were entitled to benefits as classified employees under the predecessor statute to section 88003. (Former § 13581.)[6] The Court of Appeal determined the word "working" in the phrase "195 working days" did not include Saturdays and Sundays, which meant the substitutes, who had worked 161 and 158 days, fell short of the 195-day statutory requirement. (*Trona, supra,* 70 Cal.App.3d at pp. 597–598.) The court would not have addressed the issue if all substitutes were excluded from classified service under the statute, as the District claims here.

Based on the foregoing, we reject the District's argument the last antecedent rule compels the conclusion section 88003 excludes all substitutes from classified service. In doing so, we recognize that "[p]rinciples of statutory construction are not rules of independent force, but merely tools to assist courts in discerning legislative intent." (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876].) It is to this issue we now turn.

The District contends that when section 88003 is viewed as a whole, it is apparent the Legislature intended to exclude from classified service all substitute employees, *including those who worked more than 75 percent of*

---

[6] Former section 13581 provided, in pertinent part: "The governing board of any school district shall employ persons for positions not requiring certification qualifications. . . . The employees and positions shall be known as the classified service. Substitute and short-term employees, employed and paid for less than 75 percent of a school year, shall not be a part of the classified service. . . . 'Seventy-five percent of a school year' means 195 working days, including holidays, sick leave, vacation and other leaves of absences, irrespective of number of hours worked per day."

the college year. The District's argument is not supported by the legislative history. In 1985, the Legislature amended section 88003 to include the following definition: " 'Substitute employee,' as used in this section, means any person employed to replace any classified employee who is temporarily absent from duty." Because there was no reference to the requirement a substitute employee must work more than 75 percent of the college year to attain classified service, the District surmises the amendment revealed the Legislature's intent to exclude from classified service all substitute employees, even those working more than 75 percent of the academic year. According to the District, the amendment either provides evidence the Legislature originally intended that the 75 percent limitation apply only to short-term employees, with substitute employees excluded altogether from classified service, or the amendment itself accomplished this result.

Legislative history provided to the trial court, relating to 1985 and 2002 amendments to section 88003, does not support the District's position. Rather, it reflects that the Legislature understood the 75 percent limitation applied to substitutes. For example, an analysis of Assembly Bill No. 258 (1985–1986 Reg. Sess.) provided to the Assembly Education Committee noted that "[c]urrent law[] provides that governing boards of school and community college districts may hire persons for non-certificated positions and such employees that are employed for less than 75 percent of the school year are known as substitutes or short-term employees neither of which shall be deemed as a 'classified employee.' " (Italics added.) A similarly worded staff analysis summary was provided to the Senate Committee on Industrial Relations: "The [governing boards] may also hire substitute or short-term employees for employment for less than 75 percent of the school year. Substitute or short-term employees are not part of the classified service."

Furthermore, according to the Assembly Education Committee's legislative analysis, dated March 19, 1985, the amendment was necessary precisely to curb the college's practice of hiring substitute employees indefinitely to fill permanent positions. The analysis noted the districts saved money because "substitute employees do not receive health benefits, vacation or sick leave, holidays, seniority or any other benefits of a classified employee." To remedy this, the Legislature defined "substitute employee" as any person employed to replace a classified employee "temporarily absent from duty," but allowed districts to hire substitutes for 60 days while searching for a permanent replacement. (§ 88003.) No legislative analysis advised or suggested the amendment was intended to exclude all substitute employees from classified service, even if they worked more than 75 percent of the college year in a position filled by an absent classified employee. The amendment's author, Assemblyman Patrick Johnston, summarized the effect of the proposed amendment in his letter urging the Governor to sign the measure, but made no suggestion the amendment would exclude all substitute employees from

classified service, regardless of how long they worked. In light of this evidence, we reject the District's suggestion the amendment excluded from classified service substitutes who worked more than 75 percent of the academic year.

The District fares no better when we consider the 2002 amendment. While this case was pending in the trial court, the Legislature amended section 88003 to add the following qualification to hiring short-term employees: "Before employing a short-term employee, the governing board, at a regularly scheduled board meeting, shall specify the service required to be performed by the employee pursuant to the definition of 'classification' in subdivision (a) of Section 88001, and shall certify the ending date of service. The ending date may be shortened or extended by the governing board, but shall not extend beyond 75 percent of a school year." According to the District, the Legislature's reference to the 75 percent limitation in the section defining short-term employee, and the failure to mention the 75 percent limitation in the 1985 amendment defining substitute employee, "makes clear that the 75 percent limitation applies only to short-term employees and not substitutes." The District offers no evidence to support this conclusion, which requires the adoption of a substantive change in the law through implication. (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629] [because substitute and temporary classifications are not guaranteed procedural due process by statute, courts presume they are narrowly defined and should be strictly interpreted].) We also note the decision in *Oroville, supra,* 220 Cal.App.3d 289, interpreted the 75 percent restriction as applicable to both substitute and short-term employees. "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115].) In sum, if the Legislature had intended to broaden the exclusions from classified service, we presume it would have said so directly. (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540–541 [277 Cal.Rptr. 1, 802 P.2d 317] [repeals by implication disfavored].)

The District next claims that construing section 88003 to allow substitute employees classified service would lead to absurd consequences. We are not persuaded.

When interpreting an ambiguous statute, " 'consideration must be given to the consequences that will flow from a particular interpretation. [Citation.] In this regard, it is presumed the Legislature intended reasonable

results consistent with its expressed purpose, not absurd consequences.' " (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 235 [45 Cal.Rptr.2d 207, 902 P.2d 225].) As discussed above, however, we do not find section 88003 ambiguous. True, in rare cases, statutory ambiguity is not a condition precedent to further interpretation, and the literal meaning of the words may be disregarded to avoid absurd results. But this approach is reserved for "extreme cases" where the absurdity is patent.[7] (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614].) We must exercise caution using the "absurd result" rule; otherwise, the judiciary risks acting as a " 'super-Legislature' " by rewriting statutes to find an unexpressed legislative intent. (*Id.* at pp. 1699–1700.) With these principles in mind, we now consider the District's "absurd consequences" argument.

According to the District, awarding classified service to substitute employees working more than 195 days during the college year requires the District potentially to employ two classified employees for the same position. This is absurd, we are told, because classified status would create an illusion of permanency since the District, upon the incumbent's return, would immediately terminate the former substitute and now newly classified probationary employee. But the result is the same even if substitutes are denied classified status: the substitute employee would be discharged upon the classified employee's return. The only difference is that the substitute worker, if employed more than 195 days during the academic year, is entitled to various benefits, such as health insurance, while eligible. This outcome is not a patently absurd consequence. Indeed, the Legislature has taken into account the fiscal needs of community college districts by providing for summary discharge of probationary employees. (§ 88013, subd. (a).) In addition, the districts may lay off classified employees if the college is unable to pay their salaries. (§ 88017, subd. (c).) The Legislature has balanced this concern with the rights of employees. Simply put, it is not absurd to provide health coverage and other benefits for substitute workers whose service could extend well beyond the 195-day threshold requirement for classified service. The District may not view this as wise, but that does not render the statutory scheme absurd. (See *Unzueta v. Ocean View School Dist., supra,* 6 Cal.App.4th at p. 1700.)

The District's other attempts to demonstrate the statute's absurd consequences are equally unavailing. The District claims it would be forced

---

[7] A classic example is *Riggs v. Palmer* (1889) 115 N.Y. 506 [22 N.E. 188, 23 Abb.N.Cas. 452]. There, a grandson who murdered his grandfather sought to collect his inheritance under the grandfather's will. Although the New York statute of wills did not exclude beneficiaries who murdered the testator from collecting their inheritance, the appellate court concluded the statute did not permit the grandson to recover.

to stagger the employment of different substitute employees to avoid any one replacement worker from meeting the 195-day classified service requirement, resulting in costly retraining of new substitutes. But as noted above, the Legislature's statutory framework provided various fiscal protections for community college districts. The District also complains the competitive hiring procedure is unfairly bypassed when a substitute employee qualifies for classified service. But the Legislature reasonably could conclude only qualified substitutes would be retained to work more than 75 percent of the college year, and therefore the importance of providing benefits to these workers takes precedence over hiring concerns, especially considering any new hire would be a probationary employee. In any event, questions concerning the conferral of employment rights and the allocation of economic resources involve policy decisions more appropriately addressed to the Legislature, not the courts. (*Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 475 [247 Cal.Rptr. 790] (*Eureka*).)

IV

GOVERNMENT CLAIMS ACT NOTICE PROVISIONS

We now turn to whether petitioners are barred from obtaining lost wages based on their failure to provide notice under the government claims act. (See Gov. Code, § 900 et seq.) The notice requirements ensure prompt claims investigation and possible settlement, enable the public entity to make appropriate fiscal adjustments, and provide the opportunity to avoid future liability by taking remedial steps to prevent a reoccurrence. (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709 [263 Cal.Rptr. 119, 780 P.2d 349]; *Baines Pickwick Ltd. v. City of Los Angeles* (1999) 72 Cal.App.4th 298, 303 [85 Cal.Rptr.2d 74] (*Baines*).) Therefore an action for "money or damages" against a public entity may not proceed unless a written claim has first been presented to the governmental entity and the claim either has been granted or rejected. (Gov. Code, §§ 905, 945.4.) Unless a specific exception applies, "[a] suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in ' "tort, contract or some other theory." ' " (*Hart v. County of Alameda* (1999) 76 Cal.App.4th 766, 778 [90 Cal.Rptr.2d 386].)

Government Code section 905 lists several exceptions to the general rule that public entities must be provided notice of all claims for money or damages. Relevant for our discussion is subdivision (c), which excludes from notice requirements "[c]laims by public employees for fees, salaries, wages, mileage or other expenses and allowances." Here, the substitute employees' claim for lost wages, based on their misclassification, falls within this exception. But this does not resolve the issue because another provision may override the exception.

Government Code section 935 provides, in part: "(a) Claims against a local public entity for money or damages which are excepted by Section 905 . . . , and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity. [¶] (b) The procedure so prescribed may include a requirement that a claim be presented and acted upon as a prerequisite to suit thereon. If such requirement is included, any action brought against the public entity on the claim shall be subject to the provisions of Section 945.6 and Section 946."

Per Government Code section 935, the District adopted "Board Policy 3500," which in relevant part provides: "Notwithstanding the exceptions continued [sic] in Section 905 of the Government Code of the State, all claims by public officers or employees for fees, salaries, wages, overtime pay, holiday pay compensating time off, vacation pay, sick leave pay, and any other expenses or allowances claimed due from the district, when a procedure for processing such claims is not otherwise provided by State or local laws, shall be presented within the time limitations and in the manner prescribed by Sections 910 through 915.2 of the Government Code of the State. Such claims shall further be subject to the provisions of Section 945.4 of the Government Code of the State relating to the prohibition of suits in the absence of the presentation of claims and action thereon by the district."

Although petitioners were not required to provide the District notice under Government Code section 900 et seq., the District contends notice was required under Government Code section 935 and Board Policy 3500. CSEA argues their claim was not based on money or damages, and therefore any monetary relief was merely incidental to their equitable action for mandamus. We conclude the District was entitled to notice.

We rely on two cases presenting similar issues. In *California School Employees Assn. v. Azusa Unified School District* (1984) 152 Cal.App.3d 580 [199 Cal.Rptr. 635] (*Azusa*), CSEA, on behalf of cafeteria workers, bus drivers, and instructional aides, successfully sought a writ of mandate to compel the Azusa Unified School District to pay these classified workers lost wages and other benefits for six school days when they were prohibited from working. The action was based on section 45203, which CSEA interpreted as entitling classified employees (cafeteria workers, bus drivers, aides) to be paid their regular wages when the school was closed for "professional/conference days" for the teachers. In affirming the judgment, the appellate court concluded that CSEA's claim on behalf of the classified workers fell within the exception of Government Code section 905, subdivision (c), and therefore CSEA was not required to provide notice to the district under Government Code section 900 et seq. (*Azusa, supra,* at pp. 586–587.)

But the court held notice was required under Government Code section 935 and a board policy requiring notice of claims for wages. (*Azusa*, at p. 587.) In sum, the court held "the proper construction of a statute which gives rise to a duty to pay wages" was a claim for money or damages. (*Id.* at p. 590.)

Similarly, in *Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375 [34 Cal.Rptr.2d 431] (*Tapia*), the county appealed a writ of mandate issued on behalf of a deputy sheriff who sought lost wages and reinstatement after the Board of Retirement found her ineligible for a disability retirement. (*Id.* at pp. 380–381.) The Court of Appeal held Tapia's claim fell within the exceptions of Government Code section 905, but the county was entitled to notice under a local ordinance imposing notice requirements pursuant to Government Code section 935. (*Tapia, supra*, at pp. 383–384.) Because she failed to furnish the requisite notice, her claim for salary and benefits was barred. (*Id.* at p. 387.)

CSEA contends any monetary relief was merely incidental to an equitable claim seeking reclassification for Hamblen and Osuna and reinstatement for Schwab, and depended solely on whether their mandamus action succeeded. Stated differently, CSEA argues the monetary relief they sought was not an action for "money or damages" and therefore not covered by the notice provisions of the government claims act. In support, CSEA relies on *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113 [113 Cal.Rptr. 102, 520 P.2d 726] (*Minsky*), *Harris v. State Personnel Bd.* (1985) 170 Cal.App.3d 639 [216 Cal.Rptr. 274] (*Harris*) (disapproved on other grounds in *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300]).), and *Eureka, supra*, 202 Cal.App.3d 469.

In *Minsky*, the plaintiff sought the return of his property seized by Los Angeles Police Department officers during his arrest. The Supreme Court held that the city, as bailee of the plaintiff's property, was not entitled to notice under Government Code section 905 because "[a] claim for the specific recovery of property has never been considered a claim for 'money or damages' as used in section 905 . . . ." (*Minsky, supra*, 11 Cal.3d at p. 121.) Because the reasons for prompt notice do not apply when the government violates its duty to hold property for the lawful owner, no notice was required. Here, prompt notice of CSEA's claim may have led to partial relief or settlement, and would have alerted the District to any fiscal impact stemming from CSEA's lawsuit or similar claims. *Minsky* did not conclude the claim was one for incidental relief, as CSEA now argues, and its holding has not been applied outside the bailee context. (*TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742 [5 Cal.Rptr.3d 408] (*TrafficSchoolOnline*).)

In *Harris*, a state personnel board employee sought "back salary" after reinstatement had been ordered in an earlier writ proceeding. (*Harris*,

*supra*, 170 Cal.App.3d at p. 642.) Rejecting the personnel board's claim notice was required, the appellate court suggested the notice provisions of the government claims act did not apply to "actions arising on contract." (*Id.* at p. 643.) Citing *Minsky*, the court also held the employee's request for backpay was "incidental" to his request for reinstatement in the earlier proceeding, and therefore his claim was not one for "money or damages." (*Harris, supra*, at p. 643.) We find the reasoning in *Harris* unpersuasive. We disagree with the tort/contract distinction drawn by *Harris* and conclude the better view is that the government claims act applies to contract actions. (See *Hart v. County of Alameda, supra*, 76 Cal.App.4th at p. 778; *Baines, supra*, 72 Cal.App.4th at p. 305; *Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 641–642 [75 Cal.Rptr.2d 341].) In addition, contrary to Harris's claim, *Minsky* did not conclude a request for monetary relief in a mandamus proceeding was merely incidental to injunctive relief and therefore not an action for money or damages under Government Code section 905.

Finally, in *Eureka*, a substitute teacher who won reinstatement appealed the denial of her writ petition for backpay and other benefits. The Court of Appeal reversed, holding the notice requirements of the government claims act did not apply "[b]ecause [petitioner's] claim for backpay and fringe benefits was incidental to her request for reemployment and thus was not a claim for money or damages within the scope of section 905 . . . ." (*Eureka, supra*, 202 Cal.App.3d at p. 476.)

 *TrafficSchoolOnline* criticized the view that monetary relief is not an action for money or damages under Government Code sections 945.4 and 905 if it is incidental to injunctive or declaratory relief. The court explained that "[s]ince an incidental damage claim seeks monetary relief, the express language of Government Code section 945.4 requires presentation of a claim as a precondition to the filing of suit. The language in Government Code section 945.4 contains no exception for 'incidental damages.'" (*TrafficSchoolOnline, supra*, 112 Cal.App.4th at p. 741.) We agree with this observation. Here, CSEA alleges the District underpaid petitioners because they were not recognized as classified employees under section 88003. In essence, the claim is for wages earned but not paid. Subdivision (c) of Government Code section 905 generally exempts such claims from the notice requirements under the government claims act. (*Dilts v. Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 32 [234 Cal.Rptr. 612]; *Hanson v. Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942, 948 [181 Cal.Rptr. 378].) As discussed, however, Government Code section 935 authorized local public entities to require notice for claims excepted under Government Code section 905. The statutory purpose underlying the notice provisions is furthered whether a claim for monetary relief is part of an equitable action or stands on its own. To carve out a judicial exception for

incidental damages would frustrate the legislative intent underlying Government Code section 935. We therefore conclude CSEA was required to provide notice of its claims. Having failed to do so, the claims for lost wages and other monetary relief are barred.

## V

### DISPOSITION

The judgment is reversed. The court is directed to (1) issue a writ of mandate ordering the District to reclassify petitioners pursuant to Education Code section 88003 and (2) deny monetary relief requested by the petitioners. Each side shall bear its own costs.

O'Leary, Acting P. J., and Fybel, J., concurred.

A petition for a rehearing was denied December 29, 2004, and on December 10, 2004, the opinion was modified to read as printed above, and on December 29, 2004, the nonpublished portion was modified. Respondent's petition for review by the Supreme Court was denied March 16, 2005. Brown, J., did not participate therein.