Filed 11/24/20  P. v. Alcarez CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058729 |
| v. | (Super. Ct. No. 97CF0037) |
| JOE JULIO ALCAREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis, Adrian R. Contreras and Joseph Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

\*    \*    \*

Appellant Joe Julio Alcarez seeks to reverse a trial court's denial of his petition for resentencing under Penal Code Section 1170.95.[1]  The section was enacted by the Legislature through Senate Bill No. 1437 (2017-2018 Reg. Sess.; Senate Bill 1437), which was passed to "amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder."  (Stats. 2018, ch. 1015, § 1, subd. (f).)

The trial court summarily denied Alcarez's petition for failure to establish a prima facie case for resentencing under section 1170.95.  Alcarez contends we must construe section 1170.95 to apply to his attempted murder conviction.  We disagree and affirm the court's postjudgment order denying Alcarez's petition.

I

FACTS AND PROCEDURAL HISTORY

We summarized the facts underlying this case in our earlier opinion affirming Alcarez's convictions.  (*People v. Alcarez* (Mar. 3, 1999, G022586) [nonpub. opn.].)  Near midnight on New Year's Eve 1996, Alcarez introduced the victim to two individuals in setting up a drug deal.  One of the individuals assaulted the man and, during the ensuing altercation, Alcarez kicked the victim's face before the second individual shot the victim multiple times.

In 1997, a jury convicted Alcarez of attempted murder, assault with a firearm, and sale or transportation of marijuana.  (§§ 664, 187; 245, subd. (a)(2); Health & Saf. Code, § 11360, subd. (a).)  After finding certain sentencing enhancement allegations for multiple prior serious or violent felonies true, the trial court sentenced Alcarez to 35 years to life in prison.  As noted, this court affirmed the judgment in 1999.

Following the Legislature's enactment of Senate Bill 1437, Alcarez petitioned the trial court for resentencing under section 1170.95, alleging he was

---

[1]     All further undesignated statutory references are to the Penal Code.

convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine." The court denied the petition, finding Alcarez had "not set forth a prima facie case for relief under [section 1170.95]." The court explained: "A review of court records indicates defendant [Alcarez] is not eligible for relief under the statute because the defendant does not stand convicted of murder or defendant[']s murder conviction(s) is not based on felony-murder or on a natural and probable consequences theory of vicarious liability for aiders and abettors."

II

DISCUSSION

Alcarez seeks to reverse the trial court's denial of his section 1170.95 petition on two grounds. He contends the court erroneously construed section 1170.95 to not apply to attempted murder convictions and that it erroneously found he had not been convicted on a natural and probable consequences theory. We review de novo questions of statutory meaning and their application to undisputed facts. (*Ribakoff v. City of Long Beach* (2019) 27 Cal.App.5th 150, 163.) When construing a statute, our goal is to ascertain legislative intent to accomplish the statute's purpose. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.) Where there is no ambiguity, our analysis begins and ends with applying plain statutory language (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 (*Robles*)), except in "'extreme cases' where . . . absurdity is patent." (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 588 (*California School Employees Assn.*).)

The trial court did not err in denying Alcarez's section 1170.95 petition. Senate Bill 1437's resentencing benefits as found in section 1170.95 do not apply to Alcarez because he was convicted of attempted murder and not murder. (See *People v. Dennis* (2020) 47 Cal.App.5th 838, 841 (*Dennis*), review granted July 29, 2020, S262184 [Senate Bill 1437 "has no application to attempted murder"].) "Senate Bill 1437 was

3

enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)

Senate Bill 1437 contained both substantive and procedural aspects. "Substantively, Senate Bill 1437 accomplishe[d the Legislature's intent] by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*Martinez*, *supra*, 31 Cal.App.5th at p. 723.) For individuals already convicted, "Senate Bill 1437 also add[ed] . . . section 1170.95, which allows those 'convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . .'" (*Ibid.*, quoting section 1170.95, subd. (a).)

Section 1170.95 specifies that "[a]n offender may file a petition . . . where all three of the following conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Martinez*, *supra*, 31 Cal.App.5th at p. 723, quoting section 1170.95, subd. (a).)

The unambiguous language of section 1170.95 shows the trial court correctly denied Alcarez's section 1170.95 petition because he stands convicted of

4

attempted murder. (*Robles*, *supra*, 23 Cal.4th at p. 1111.) He cannot obtain relief under section 1170.95 because it expressly applies only to murder convictions.

We are not persuaded by Alcarez's contentions to conclude otherwise. Alcarez argues that, because Senate Bill 1437's legislative intent was to abrogate attempted murder convictions based on the natural and probable consequence doctrine (by amending section 188), the Legislature also intended to provide resentencing benefits to all of those existing convictions (by enacting section 1170.95). The argument is unpersuasive at the outset because we disagree with its initial premise that Senate Bill 1437 abrogated attempted murder convictions based on the natural and probable consequence doctrine. Senate Bill 1437's plain statutory language demonstrates "[t]he legislation reaches the crime of murder but has no application to attempted murder." (*Dennis*, *supra*, 47 Cal.App.5th at p. 841.)

Alcarez correctly notes the appellate courts have reached differing conclusions on whether Senate Bill 1437 applies to attempted murder convictions that are not final. (Compare *People v. Larios* (2019) 42 Cal.App.5th 956, 964-968 (*Larios*), review granted Feb. 26, 2020, S259983 [applies]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1012-1016 (*Medrano*), review granted Mar. 11, 2020, S259948 [applies]; *People v. Sanchez* (2020) 46 Cal.App.5th 637, 642-643 (*Sanchez*), review granted Jun. 10, 2020, S261768 [applies]; with *Dennis*, *supra*, 47 Cal.App.5th at p. 846 [does not apply]; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753-760 (*Munoz*), review granted Nov. 26, 2019, S258234 [does not apply]; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103-1105, review granted Nov. 13, 2019, S258175 [does not apply]; *People v. Love* (2020) 55 Cal.App.5th 273 [does not apply].)

Notwithstanding the present split, even the cases most favorable for individuals convicted of attempted murder—i.e., *Larios*, *Medrano*, and *Sanchez*—do not support Alcarez's challenge to the trial court's interpretation of section 1170.95 here, as Alcarez concedes. As noted, those courts interpreted Senate Bill 1437 to apply only to

5

pending attempted murder convictions, not to defendants serving a sentence under a final judgment. Here, it is undisputed Alcarez's conviction had become final by the time he petitioned for relief under section 1170.95. (*People v. Vieira* (2005) 35 Cal.4th 264, 306, quoting *People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5 ["'retroactive application of an amendment'" becomes unavailable when direct appeal relief is no longer available].) Thus, the cases Alcarez relies on provide no direct support for his position.

Even if we ignored section 1170.95's plain language, we would reject Alcarez's invitation to extend the rationale of *Larios*, *Medrano*, and *Sanchez* to provide section 1170.95's resentencing benefits to those defendants laboring under a final judgment. The relevant rationale in those cases was based on the amended meaning of "malice," under section 188, and it does not necessarily inform who should be provided resentencing benefits under section 1170.95.

Senate Bill 1437 amended section 188's *existing* statutory definition of "malice" whereas section 1170.95 created a *new* statutory framework for resentencing. (See, e.g., *People v. Houston* (2012) 54 Cal.4th 1186, 1217 [malice was a necessary element of attempted murder before Senate Bill 1437].) The *Larios*, *Medrano*, and *Sanchez* courts concluded the amendment of section 188 meant that nonfinal attempted murder convictions could no longer be based on the natural and probable consequences doctrine. The courts analyzed how "malice" was defined before Senate Bill 1437 (*Medrano*, *supra*, 42 Cal.App.5th at p. 1015; *Larios*, *supra*, 42 Cal.App.5th at pp. 967-968) to deduce what the word still meant after its amendment. (*Ibid.* ["[b]y failing to exclude attempted murder from the ambit of section 188," as amended, "the Legislature must have intended for its provisions to apply to all crimes requiring express malice," including attempted murder]; *Id.* at p. 1015 ["Senate Bill 1437's abrogation of the natural and probable consequences doctrine as stated in section 188, subdivision (a)(3) necessarily applies to attempted murder"]; *Larios*, *supra*, 42 Cal.App.5th at p. 968 [same]; *Sanchez*, *supra*, 46 Cal.App.5th at pp. 642-643 [agreeing with the analyses of

6

*Medrano* and *Larios* on the point])  The rationale was *not* used to interpret section 1170.95 in either *Medrano* or *Larios* (see *Medrano, supra*, at p. 1017 ["plain language of section 1170.95, subdivision (a) limits relief" to murder convictions]; *Larios*, at p. 969 [same]) and the section was not at issue in *Sanchez*.  (*Sanchez*, *supra*, 46 Cal.App.5th at p. 645 [conviction reversed on direct appeal].)

In other words, it does not necessarily follow that Alcarez would be entitled to section 1170.95 resentencing benefits even assuming section 188's amendment abrogated nonfinal attempted murder convictions, as reasoned in *Larios*, *Medrano*, and *Sanchez*.  The deductive reasoning applied by those courts to interpret *amended* section 188 would not compel a favorable interpretation of the *new* statutory framework established by section 1170.95, even if we looked past its clear statutory language. Moreover, even if the language was not clear, we would still reject Alcarez's argument because Senate Bill 1437's legislative history supports our conclusion that it does not apply to defendants convicted of attempted murder.

We also reject Alcarez's argument that applying section 1170.95 only to murder convictions leads to an absurd result because it lessens sentences for defendants whose victims were actually killed while preserving sentences where the victims lived. [2] Alvarez may not view this as wise, but that does not render the statutory scheme absurd. (See *California School Employees Assn.*, *supra*, 124 Cal.App.4th at p. 588.)  The Attorney General correctly notes that providing one category of convicted individuals certain benefits while denying those same benefits to a different category of defendants is not an absurd result.  Indeed, Alcarez's argument has been presented in the form of equal protection challenges to Senate Bill 1437 and appropriately rejected.  (See, e.g., *Munoz*, *supra*, 39 Cal.App.5th at pp. 760-766 [equal protection principles do not support the view that Senate Bill 1437 applies to attempted murder convictions]; see also *Love*, *supra*,

---

[2]     As noted, Alcarez's sentence incorporated enhancements for multiple prior serious or violent felonies.

55 Cal.App.5th at pp. 360-361 [treating those convicted of murder and attempted murder differently does not offend equal protection principles].)  As presented in this case, we reject Alcarez's absurdity claim given section 1170.95's plain and logical statutory language.  (*California School Employees Assn.*, *supra*, 124 Cal.App.4th at p. 588 ["[t]rue, in rare cases, statutory ambiguity is not a condition precedent to further interpretation, and the literal meaning of the words may be disregarded to avoid absurd results.  But this approach is reserved for 'extreme cases' where the absurdity is patent"].)

Finally, we also reject Alcarez's contention that the trial court's ruling was based on a purportedly mistaken understanding about the nature of Alcarez's conviction. Alcarez asserts the court mistakenly concluded he was convicted for "*directly* aiding and abetting in the attempted murder of the victim" (italics added)—i.e., not based on the natural and probable consequences doctrine—but he only partially quotes the court's ruling.

As noted, the trial court's ruling explained its denial of Alcarez's petition as follows:  "defendant [was] not eligible for relief under [section 1170.95] because the defendant does not stand convicted of murder *or* defendant[']s murder conviction(s) is not based on felony-murder or on a natural and probable consequences theory of vicarious liability for aiders and abettors." (Italics added.)  That is, the ruling contained *two* alternative grounds for denying the petition whereas Alcarez only attacks the second to claim error.  Because the first ground undisputedly applies—i.e., Alcarez was "not [] convicted of murder]"—the court's statement is factually accurate, contrary to Alcarez's assertion.  In sum, the court correctly concluded Alcarez was not entitled to relief because section 1170.95 does not provide resentencing benefits for attempted murder convictions.

8

III

DISPOSITION

The postjudgment order denying Alcarez's section 1170.95 petition is affirmed.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

GOETHALS, J.